STATE OF HAWAII, Plaintiff-Appellee, *v.* BRYCE SIMPSON WILKINS, Defendant-Appellant

NO. 7426

JANUARY 16, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

Appellant was convicted by a jury of two counts of distribution of a harmful drug (phencyclidine) in the second degree and two counts of distribution of a dangerous drug (cocaine) in the second degree. He appeals those convictions. For the reasons stated herein, we affirm.

Two issues are raised on review: 1) whether the State established a sufficiently reliable chain of custody with respect to the physical evidence to withstand defendant's Motions for Acquittal and 2) whether the court committed reversible error in admitting the testimony of undercover officer Mathison concerning prior unrelated purchases of phencyclidine (PCP) and its street term designation as THC or "tea".

Officer Mathison was an undercover police officer in the employ of the Hawaii County Police Department's Vice Division. As part of his training for undercover work, he was given some instruction in the language of the street, drug terminology and prices. Officer Mathison testified that the defendant on July 4, 1977 and July 16, 1977 offered to sell THC or "tea" which was the street terminology for the drug PCP. Mathison purchased the drugs from the defendant and, on both dates, immediately placed them in the ashtray of his truck and locked it. On both dates when he arrived home, he

locked the purchases in a metal cabinet whose only key was in his possession. The two drug packets ultimately became State's Exhibits 1 and 2. On the 5th of July, the first purchase was turned over to Sgt. Pacheco, who placed the packets in plastic bags, locked them in the trunk of his automobile until the following day when he placed a property and evidence tag on the plastic bag containing the evidence and locked it in his desk drawer. They were not removed until he hand-carried both packets to the Honolulu Crime Lab on the 29th of July. Until it was taken by Sgt. Pacheco to Honolulu, the July 16th purchase was handled in the same manner as the purchase of July 5th. The Crime Lab at the Honolulu Police Department is a security area whose doors are always locked. The only persons having direct access to the laboratory are the criminalists. The two packets were turned over to criminalist Saito on July 29th. He performed chemical analysis on the packets on November 16th and determined the contents to be PCP.

Officer Mathison testified that on August 12th defendant offered to sell and did sell to him two (2) packets containing cocaine or "coke." Both packets, one wrapped in cellophane, were taken by Mathison to his home and locked in the metal cabinet. Two hours later, he removed the packets and turned them over to Sgt. Pacheco at a pre-arranged meeting place. Sgt. Pacheco locked the packets in the trunk of his automobile. No other person had keys to Sgt. Pacheco's automobile. The packets would later become State's Exhibits 3 and 4. On the following day, Sgt. Pacheco placed property and evidence tags on each of the packets and locked them in his desk drawer. The packets remained in the locked drawer until November 6th when they were turned over to Sgt. Rapozo of the Hilo Police Department. Sgt. Rapozo locked the packets in his desk drawer until the following day when he hand-carried them to the Honolulu Police Department Crime Lab and turned them over to criminalist Saito. Saito performed chemical analysis on the powders contained in the packets on November 15th and determined the contents therein to be cocaine.

The appellant denied having sold the drugs to Mathison and expressed doubt as to whether he could have been at the

Palm Terrace Bar at the time the sales were made. Neither the appellant nor any of his witnesses could affirmatively establish that the appellant was in a place other than the Palm Terrace Bar at the time the sales were made. Appellant's motions for judgment of acquittal were denied and the jury returned a guilty verdict on all four counts.

Appellant argues that the judgment of acquittal was improperly denied because the State failed to establish a sufficiently reliable chain of custody to prove that the contents of the evidence admitted were, in fact, the same substances allegedly sold to Officer Mathison by the appellant. He argues that the imminently fungible character of the contents of Exhibits 1 through 4 and the accessibility of the exhibits while in the custody of the Hilo Police Department made them readily susceptible of tampering, substitution, loss or mistake from the date of their purchase until presentation at trial. Appellant cites *State v. Olivera*, 57 Haw. 339, 555 P.2d 1199 (1976), in support of his contention that the reliability of the chain of custody was insufficient to establish a connection between the appellant and the substances admitted in evidence to support his conviction beyond a reasonable doubt.

The court in *Olivera, supra,* noting the application of the rule of fungible exhibits in other jurisdictions and citing *Jones v. State*, 260 Ind. 463, 296 N.E.2d 407 (1973) stated:

> Where the exhibit is a drug or chemical in the form of a powder or liquid which is readily susceptible of alteration or substitution, the courts tend to be strict in requiring that a chain of custody be established which minimizes the possibility of any tampering with the exhibit.

The court went on to find:

> It is not necessary to negate all possibilities of tampering with an exhibit, it being sufficient to establish only that it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence. (Citation omitted.)

*Olivera* at 344.

*Olivera, supra,* was concerned with the possibility of the alteration of fingerprint evidence. However, a more recent

supreme court case has addressed the identical issue that is now before us.

In *State v. Vance*, 61 Haw. 291, 602 P.2d 933 (1979), the appellant argued that an evidence exhibit containing a packet of cocaine was improperly admitted absent a showing of the chain of custody from the time the evidence was received by the police chemists until it was received into evidence at trial. The supreme court in *Vance, supra,* citing *Olivera, supra,* held that proof of chain of custody of the substance during the period after analysis until its introduction into evidence at trial is not required absent a specific allegation of tampering. Testimony in the case at bar, we think, sufficiently establishes a reliable chain of custody from the time the substances were obtained by Officer Mathison until their chemical analysis by Saito. In our view, the records support our finding that the chain of custody was sufficiently established until the evidence was admitted at trial. Appellant has made no specific allegation of tampering, substitution, loss or mistake. Accordingly, we find no error in the denial of appellant's motion for acquittal, the chain of custody having been sufficiently established to insure that the substances admitted into evidence were, in fact, the same substances obtained from the appellant.

Appellant further argues that the court erred in admitting the testimony of Officer Mathison that in street language THC or "tea" referred to PCP and that prior purchases of THC or "tea" were later chemically analyzed to be phencyclidine or PCP. Officer Mathison was permitted to testify that THC or "tea" in street language referred to PCP and that three prior purchases of "tea" made by him in his capacity as an undercover officer were later chemically analyzed to be phencyclidine or PCP as expected. He then testified that the appellant offered to sell him THC or "tea" which, based upon his knowledge of drug terminology in the streets, was PCP. At trial the court overruled appellant's objection that the testimony given was incompetent and irrelevant. We agree.

The following took place prior to Officer Mathison's testimony regarding his street knowledge and the prior purchases.

Q. What division of the Hawaii County Police Department were you assigned to during early 1977?

A. I was assigned to the Vice Division.

Q. And in what capacity did you operate, specifically, during 1977?

A. I was undercover police officer. [sic]

Q. What were you [sic] duties as an undercover police officer?

A. Primarily, to conduct investigations into various types of crimes and/or violations which wouldn't be accessible to a normal uniform police officer.

Q. And would you give us some examples?

A. Yes, sir. Primarily, was narcotics, prostitution, sale of weapons.

Q. Did you use a uniform while performing your duties?

A. No, sir. I didn't.

Q. Now, prior to July of 1977, did you initiate any drug cases?

A. Yes, sir. I did.

Q. What type of drug did this involve?

A. It was a combination of various types of amphetamines, barbituates [sic]; more readily available was marijuana, cocaine, THC, PCP.

Q. And how were you involved?

A. I would purchase the drugs.

Q. Okay. Prior to 1977, July, approximately how many times did you purchase the drug cocaine?

A. I purchased cocaine four times prior to this date.

Q. And what was it referred to?

A. Coke.

Q. Okay. How many times did you purchase the drug phencyclidine, or PCP, prior to July of 1977?

A. Three times.

Q. And during these three times, what was this drug referred to?

MISS NAKATANI: Your Honor, I would object. This witness is not competent to testify —

THE COURT: Objection is overruled.

Q. BY MR. IBARRA: Okay. Answer the question.

A. The PCP would be referred to as THC or "tea".

We find that Officer Mathison's testimony was properly admitted within the trial court's broad discretion to admit such testimony where a proper foundation for its competency, relevance and expertise is laid. We note also that it is an elementary principle of criminal law that intent may be proven and often must be proven by circumstantial evidence and the reasonable inferences to be drawn therefrom. The weight to be ascribed to such evidence is a determination within the province of the jury. *Territory v. Damaso Ebarra*, 39 Haw. 488 (1952); *State v. Hale*, 45 Haw. 269, 367 P.2d 81 (1961); *State v. Stuart*, 51 Haw. 656, 466 P.2d 444 (1970); *State v. Hopkins*, 60 Haw. 540, 592 P.2d 810 (1979). In accordance with this widely accepted view the jury was instructed as follows:

> Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a person does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a person does or fails to do may indicate intent or lack of intent to commit the offense charged.
>
> In determining the intent with which an act is done, the jury may consider the circumstances attending the act, the manner in which it is done, the means used, the sound mind and the discretion of the person committing the act, and any statement made or other acts done or omitted by him.

Therefore, we cannot hold that the testimony of Officer Mathison's prior purchases of PCP under the name THC or "tea" was so prejudicial, irrelevant and incompetent so as to give rise to reversible error.

Finally, on appeal appellant for the first time argues that the testimony regarding prior purchases of "tea" that later turned out to be PCP was inadmissible prejudicial hearsay

admitted as evidence that the defendant possessed the requisite intent to "knowingly" distribute PCP.

Our supreme court has followed a liberal policy with respect to the admission of expert testimony and the admission of *all* relevant evidence, generally. *State v. Iaukea*, 56 Haw. 343, 537 P.2d 724 (1975). Moreover, it is well-settled law that the admission of expert testimony is within the broad discretion of the trial judge and will be overturned on appeal only where there is a clear showing that the discretion has been abused. *State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978); *U.S. v. Cyphers*, 553 F.2d 1064 (7th Cir., 1977). As an indication of the breadth of that discretion, the Seventh Circuit Court of Appeals in an appeal of a bank robbery conviction upheld the admission into evidence of expert testimony that hairs recovered from the articles used by the appellant in the robbery were "microscopically like" hair samples taken from the appellant, even though there was admitted to be an insufficient basis to conclude that the hairs did, in fact, come from the defendant. Despite appellant's objection that the testimony was, *inter alia*, irrelevant, prejudicial and not based on reasonable scientific certainty the court admitted the testimony finding that

> the witness was properly qualified as an expert, and the subject matter of his testimony — microscopic comparison of hair samples — was beyond the ken of the ordinary layman. Trial judges are given broad discretion to determine the qualifications of expert witnesses and to decide whether expert testimony may assist the jury's deliberations.

*U.S. v. Cyphers, supra.*

Accordingly, we find that the trial court did not abuse its discretion in admitting Officer Mathison's testimony.

Affirmed.

*Herbert B. K. Lau (Marie Milks* on the opening brief), Deputy Public Defenders, for defendant-appellant.

*Charlene Iboshi (Robert S. Rodrigues* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.