TITLE GUARANTY ESCROW SERVICES, INC., Plaintiff, *v.* EDISON POWLEY, WILLIAM F. WHITE, and KEITH V. SHEPHERD, Crossclaimed Defendants-Appellants, and HERBERT KAZUO HORITA and WILLIAM W. SAUNDERS, Crossclaimant Defendants-Appellees, and DONNA YOUNG, TROPIC HOLDINGS, INC., BOB SILVERMAN, dba BOB SILVERMAN & ASSOCIATES, and REAL ESTATE ONE CORPORATION, Defendants.

NO. 7002

CIVIL NO. 46868

JULY 1, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

Appeal is taken from the order of the trial court finding that Edison Powley, William F. White, and Keith V. Shepherd (hereinafter Buyers) had forfeited a $50,000.00 deposit paid into escrow as part of the down payment on the purchase of the Diamond Head Beach Hotel by their inability to pay the balance of the down payment in compliance with the terms of the Deposit Receipt, Offer and Acceptance (DROA).

At issue is whether the court erred in its ruling. More specifically, appellants-Buyers raise the issues (1) whether the court's refusal to admit certain opinion testimony regarding local customs in real estate transactions was an abuse of discretion and (2) whether certain of the court's Findings of Facts and Conclusions of Law are clearly erroneous.

Finding no error, we affirm the order of the trial court.

This action was commenced by Title Guaranty Escrow Services, Inc. (hereinafter Title or Escrow), as a complaint in interpleader against the Buyers and Herbert Kazuo Horita and William W. Saunders (hereinafter Sellers) to determine which of them is entitled to the proceeds of the escrow account established for the proposed sale of the Diamond Head Beach Hotel. Title is not a party to this appeal. The Buyers and Sellers entered cross-claims against each other for the right to the proceeds.

Briefly, the facts reveal the following: Prior to 1974, the Sellers had obtained a leaseold interest in the property at 2947 Kalakaua Avenue in Honolulu, known as the Diamond Head Beach Hotel. It is a 78 to 80 room hotel. The fee owners are Man Sing Lum (60%) and Clarence Kwon Hou Lum (40%), distributees under the will of Chow Sin Kum Lum, the original fee owner. On January 29, 1974, the

Sellers executed a DROA, intending to sell their leasehold interest in the subject property to Lalakea Corporation and Realty Sales and Development, Inc. (hereinafter Lalakea), for 2.5 million dollars in cash. Lalakea had put up a non-refundable $50,000.00 deposit for the cash sale and closing was set for July 22, 1974. Sometime in June 1974 Lalakea realized they would not be able to obtain the necessary financing by the closing date and entered into an oral agreement with Saunders wherein Lalakea would recoup its deposit if it could find a new buyer for the property within the original time set for closing or a reasonable time thereafter. Sellers and Lalakea agreed to split whatever profits might be made on the transaction.

Lalakea began to search for a buyer by contacting a number of brokers. One of the brokers contacted was Robert A. Silverman. In August of 1974, Appellant Keith V. Shepherd, a Canadian businessperson, was in Hawaii and together with Calvin Cullen, a salesperson and operations manager with Real Estate One Corporation, met with Silverman and prepared a DROA dated August 4, 1974, which was presented to Saunders. Saunders rejected the offer but left the door open for further negotiations. On August 6, 1974, Appellant Shepherd again presented to Saunders a standard DROA as prepared by Appellant Shepherd, and discussion continued. On August 9, 1974, Sellers and Appellant Shepherd executed the August 6, 1974, DROA for the sale of the subject property for 2.8 million dollars. The agreed-upon down payment was $200,000.00, payable as follows: Shepherd put up $1,000.00 on August 6, 1974; $49,000.00 was due on August 16, 1974; and the remaining $150,000.00 balance was due on closing, October 15, 1974. Edison Powley, William White and Donna Young[1] provided the $49,000.00 due on August 16, which was forwarded to Bob Silverman, the real estate salesperson handling the transaction for the Buyers.

The DROA in question was a one-page standard document with a three-page addendum that substantially altered much of the printed language of the DROA form. One of the terms in the

---

[1] Donna Young is not a party in this appeal.

addendum gave the Seller discretion to extend closing for 30 days.[2] Title was designated as escrow agent, and an escrow account was opened and both Sellers and Buyers executed Escrow Instructions. The Buyers were not named as buyers in the DROA; the names of the buyers were to be given later by Appellant Shepherd. Numerous requests to Appellant Shepherd by Title and Silverman for the names of the buyers got no response until October 21, 1974, six days after the original date set for closing, when the Buyers' attorney, Harold Nickelsen, submitted the name of Tropic Holdings, Inc.

On or about October 15, Saunders notified Silverman that he would not be available to close October 15 as he would be out of town and was thereby exercising his discretion to extend the closing time under the terms of the DROA. There is conflicting testimony as to whether Silverman or Shepherd were, in fact, notified of Saunders' intention. The court chose to attach greater credibility to Saunders' version. In any event, a failure to give notice of the Sellers' election to extend closing for 30 days does not appear to violate any agreement entered into between the parties.

The Buyers were in Honolulu on the 15th of October and learned of Saunders' absence. Buyers, armed with the knowledge that the Sellers were absent, visited Escrow and Appellant Shepherd announced his availability for closing even though, according to the testimony of Calvin Cullen, Shepherd told him he did not have the $150,000.00 required to close the deal. Shepherd did not dispute this testimony and his attempted clarification of his statement to Calvin Cullen was not believed by the trial court.

Buyers then engaged the legal counsel of the then Conroy, Hamilton, Gibson, Nickelsen and Rush law firm two days later, on October 17, 1974. Thereafter, Nickelsen and Saunders were unable to make sufficient contact so as to reach a mutually agreeable closing time. Saunders obviously was proceeding under the assumption the closing had to occur within thirty days of October 15, 1974, being November 14, 1974. However, by November 11, the parties hadn't

---

[2] 5. Buyer and Seller shall perform all their obligations set forth herein on or before October 15, 1974. Buyer and Seller both agree that this time may be extended for a period of 30 days at the discretion of the Seller. All documents shall be recorded within a reasonable time thereafter, and upon such recordation, the net proceeds shall be disbursed to Seller.

been able to make contact to reach mutually agreeable terms in the Agreement of Sale. Saunders, on his own, then drew up and tendered an Agreement of Sale to Escrow. No response was forthcoming even though the end of the 30-day extension for closing was very near. On November 14, Buyers' counsel Nickelsen informed Saunders that the Buyers would be in Honolulu on or around the 18th of November and would be expecting to meet with him. A meeting was arranged for November 20, 1974. Apparently the Buyers' intentions were to enter into further negotiations prior to closing because, they then argued: (1) the terms of the DROA were ambiguous; (2) the Sellers' failure to supply a second inventory on October 15, 1974 (the original closing), rendered them incapable of being ready to close; and (3) the Sellers failed to obtain the consents of the fee owners (even though the terms of the lease proscribed the unreasonable withholding thereof). However, Sellers entered the November 20 meeting with the assumption that Buyers were in default for having failed to close by the end of the 30-day extension period. Also in dispute was the parties' understanding of the Buyers' intention to convert the property to time-sharing units. In the ensuing discussions, it became clear that Shepherd had not been able to raise the $150,000.00 required to close the deal and that his efforts to wring controversy out of the terms of the Agreement of Sale amounted to a stall to gain more time for him to raise the money. Sellers then offered to extend closing for an additional thirty days upon the payment of $10,000.00, provided that interest and charges would be prorated retroactively to November 20. Buyers chose not to accept this offer and the deal simply fell through. Some time later, after both Buyers and Sellers had requested return of the deposit from Escrow, this action began.

On appeal, the Buyers essentially argue they are entitled to retain the proceeds from the escrow account because the Sellers' failure to comply with the terms of the DROA in drafting the Agreement of Sale prevented them from closing.

They ascribe error to the court's refusal to admit testimony of John Rolls, an attorney for Title, on the local custom that the escrow company normally prepares the Agreement of Sale in conformity with the DROA through negotiations with both parties. The court found this testimony to be immaterial, irrelevant, and cumulative.

The Buyers also argue that the court erred in its refusal to permit testimony of Rolls on whether the Agreement of Sale drawn by Saunders was in compliance with the DROA. The court excluded this testimony as invading the province of the court.

We find no error in the court's exclusion of the proffered testimony. In this jurisdiction the law is well-settled that the admission of expert testimony and the weight to be given it if and when it is admitted are matters resting within the discretion of the trial court and will not be overturned on appeal unless that discretion is abused. *Sherry v. Asing,* 56 Haw. 135, 531 P.2d 648 (1975); *Friedrich v. Department of Transportation,* 60 Haw. 32, 586 P.2d 1037 (1978); *State v. Wilkins,* 1 Haw. App. 546, 622 P.2d 620 (1981). Appellant bears the burden of showing that the trial court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Sacoco,* 45 Haw. 288, 367 P.2d 11 (1961); *GLA Inc. v. Spengler,* 1 Haw. App. 647, 623 P.2d 1283 (1981); *Hawaii Automotive Retail Gasoline Dealers' Association, Inc. v. Brodie,* 2 Haw. App. 99, 626 P.2d 1173 (1981); *State v. Faulkner,* 1 Haw. App. 651, 624 P.2d 940 (1981).

Appellants have not met this burden and we, accordingly, find no reversible error in the court's refusal to admit the testimony at issue.

Appellants next contend that certain of the court's findings of fact were erroneous and thus warrant reversal. We need not address each finding specifically because the findings alleged as erroneous essentially result from the amount of credibility which the court ascribed to the testimony of the witnesses at the trial and we are bound by that. *Lennen & Newell, Inc. v. Clark Enterprises, Inc.,* 51 Haw. 233, 456 P.2d 231 (1969); *Wick Realty, Inc. v. Napili Sands Maui Corp.,* 1 Haw. App. 448, 620 P.2d 750 (1980). Whether and to what extent a witness is worthy of credit is a matter for the trial court to determine and it can accept or reject the testimony of a witness in whole or in part. *Shinn v. Yee,* 57 Haw. 215, 553 P.2d 733 (1976); *Lennen & Newell, Inc. v. Clark Enterprises, Inc., supra.* Our supreme court has stated:

> Accordingly, where the trial court's determinations of fact are largely dependent upon the resolution of conflicting testimony, great weight will be accorded its findings upon review. [Citation omitted.] And while reasonable minds may fairly differ

as to whether certain evidence establishes a fact in issue, yet where findings of fact are supported by substantial evidence the findings of the trial court will be sustained. [Citation omitted.] *Shinn v. Yee, supra,* at 219.

We have carefully reviewed the record and in accordance with Hawaii Rules of Civil Procedure (HRCP) Rule 52(a)[3] see no reason to disturb the court's findings as we are not "driven irrefragably to the conclusion that all objective appraisals of the evidence would result in a different finding." *Low v. Honolulu Rapid Transit,* 50 Haw. 582, 445 P.2d 372 (1968); *American Security Bank v. Read Realty, Inc.,* 1 Haw. App. 161, 616 P.2d 237 (1980).

Accordingly, the judgment is affirmed.

*Stanford Manuia (James N. Duca* on the brief), *Woo, Kessner & Duca* of counsel, for crossclaimed defendants-appellants.

*Gordon D. Nelson & William W. Saunders* Attorney Pro Se and for crossclaimant defendant-appellee Horita.

---

[3] HRCP Rule 52(a) provides that:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.