STATE OF HAWAII, Plaintiff-Appellee, *v.* VERNON REIGER, SR., Defendant-Appellant

NO. 7753

CRIMINAL NO. 52736

MAY 14, 1982

RICHARDSON, C.J., LUM, NAKAMURA,
PADGETT AND HAYASHI, JJ.

*Per Curiam.* This is an appeal from a jury conviction for attempted murder, rape in the first degree and burglary in the first degree. We affirm.

We note that appellant's opening brief fails, in many respects, to conform to our Rule 3(b)(5). Rule 3(b)(5), Hawaii Supreme Court Rules, is intended to provide a format which clearly spotlights the issues on appeal. The failure of appellant's counsel to follow the provisions of that rule make many points of the appeal difficult to understand and consequently, imposes an undue burden on the court and opposing counsel. Although we have the power to disregard those points where the rules have not been followed, we will not exercise that power in this particular case. Counsel are placed on notice, however, that that power, as well as the power to strike portions of the brief or to levy sanctions against counsel, may well be exercised in a future case.

Appellant's first claim of error is that the presence of the words "or knowingly" in Count I of the indictment renders that Count fatally defective.

No objection was made on that ground in the court below, but counsel claims that, under our decision in *State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977), we must, nevertheless, reverse.

Count I of the indictment read:

On or about the 26th day of February, 1979, in the City and County of Honolulu, State of Hawaii, VERNON REIGER, SR., did intentionally or knowingly attempt to cause the death of Josephine Hoapili by shooting her with a firearm, an act which constitutes a substantial step in a course of conduct intended to culminate in the commission of the crime of Murder, thereby committing the offense of Attempted Murder in violation of

Sections 705-500 and 707-701 of the Hawaii Revised Statutes. Section 705-500, HRS, provides in part:

>    (1)  A person is guilty of an attempt to commit a crime if he:
>
>    .    .    .    .
>
>    (b)  Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in the course of conduct intended to culminate in his commission of the crime.

While intentionally and knowingly have somewhat varying definitions under §§ 702-206(1) and (2), nevertheless, the essential element of intentional wrong is satisfied if the act which is the attempt constitutes a substantial step in the course of conduct intended to culminate in the commission of the crime, in this case, murder. All of the essential elements of the crime of attempted murder were contained in the charge. Here, under the evidence, the assailant, holding the gun against the victim, fired three bullets into her head. We fail to see how, in those circumstances, there could be any question as to whether the act of shooting the victim was intentional or that either the appellant or the jury was misled by the appearance of the words "or knowingly" in the charge.

The same can be said of the claim that the unobjected to repetition of the charge in the instructions was erroneous. Neither of these grounds have merit.

The third ground relied on on appeal is the claim of error in permitting the introduction into evidence of certain photographs which the appellant dubs "mugshots". The photographs were the photographic lineup or array shown to the victim in the hospital after the attack. In this case, the defense was alibi. The question of identification was, therefore, crucial to the proof of the prosecution's case and obviously, proof that the victim had picked the appellant out of a photographic display at an earlier point was relevant and necessary to the government's case. In *State v. Kutzen,* 1 Haw. App. 406, 620 P.2d 258 (1980), our Intermediate Court laid down a tripartite test for the introduction of such evidence. One, the government must have a demonstrable need to introduce the photographs — that test was met. Two, the photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record — that test was met, and three, the manner of introduction at trial must be such that it does not draw particular

attention to the source or implications of the photographs — that test was met. There was no error in the introduction of the photographic lineup.

Appellant also complains that the State engaged in improper argument in its opening and closing statements. We have examined the statements complained of and find them to be no more than fair comment upon the manner in which the attack on the victim in question was carried out.

Appellant contends that there was evidence of prior convictions introduced which was irrelevant and erroneous. The State's witness, Shannon Scott, appellant's former girlfriend and former inhabitant of the apartment where the attack occurred, had testified that she had adopted the name Scott which was the name under which appellant had lived with her. When she was asked why, she answered "Mr. Reiger told me that was his good name. Reiger was a name he had a lot of, a long police record with." No objection to this testimony was made at the time. Indeed, it was not until the following Monday, that a motion for a mistrial was inserted into a lengthy argument about other matters. No motion to strike the evidence or for a cautionary instruction was ever asked.

We note that the testimony does not say that appellant had ever been convicted of any crime and we think, in the circumstances of this case, the probative value of the witness' answer, outweighed any prejudicial effect. *State v. Iaukea*, 56 Haw. 343, 437 P.2d 724 (1975); *State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978). We note that appellant's attack on appeal is upon the admission of the evidence, which was not objected to, and not upon any deniel of the motion for mistrial which was made. We find no error. .

After the jury was impaneled, the court was informed that one of the jurors had heard something about the case. She was examined in the presence of the other jurors, over appellant's counsel's objection. She stated that what she had heard was:

> The first part was about James Benton's bail and then Mr. Reiger's bail and the amount and the discrepancy and it was the name and also Mr. Reiger's possible connection with the underworld.

Thereafter, upon examination, it developed that she felt she had been prejudiced and she was excused. The court stating:

> All right. The court is going to excuse Mrs. Kamodo. All

right. The court is satisfied that she would be unable to serve as a fair juror in this case. Thank you. You are excused. And the court will, perhaps, any particular method in replacing the regular juror with one of the alternates? All right. If there are no objections, the court is going to ask Mr. Namba who is the first alternate to sit in the seat vacated by Miss Kamodo.

MR. TUOHY: No objection.

Counsel then asked the jury to be polled, stating:

Your Honor, could we ask the jury to be polled individually as to whether or not that particular article, especially since yesterday's paper which had a misleading headline and ask if anyone inadvertently read it on an individual basis?

Two of the jurors replied affirmatively. On questioning, however, they stated that they were not prejudiced. Appellant's counsel was given the opportunity to ask questions of those jurors and did not do so. No challenge to their sitting further was made nor was any challenge to the rest of the panel made at that point in time. On the record, the State sufficiently established that what the juror said was harmless to the appellant. *Remmer v. U.S.*, 347 U.S. 227, 98 L.Ed. 654, 74 S. Ct. 450 (1954).

Although it would have been better practice to have examined the individual jurors who might be affected by what they had heard or read out of the presence of the other jurors, we do not see prejudicial error in what happened in this case.

Appellant complains about prejudicial news accounts but none of those are in the record before us.

Appellant also complains that the State violated Rule 16 of the Hawaii Rules of Penal Procedure by not disclosing to appellant's counsel reports of experts who took fingerprints in the victim's apartment.

Rule 16(b) reads:

(1) *Disclosure Upon Written Request of Matters Within Prosecution's Possession.* Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:

. . . .

(iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the

preparation of the defense and are specifically designated in writing by defense counsel, . . .

However, the record makes clear that the prosecutor did disclose to appellant's counsel at a pre-trial conference the fact that there were fingerprints taken and that they had been unable to connect them with the appellant. The reports therefore were disclosed. . .

If, for purposes of the defense, the fingerprint report was desired to attempt to show that someone else had committed the crime, then under the terms of the rule, it was incumbent upon counsel to specifically designate, in writing, that report for production. The truth of the matter is, that appellant's counsel knew about the report and simply didn't follow up on it. Appellant contends that the report was exculpatory. Nothing prevented appellant's counsel from calling the fingerprint experts of the police department to establish the lack of connection with appellant if he thought that was an item of evidence which would aid his case.

Moreover, we point out that, under the provisions of Rule 16(e)(8), the sanctions provided for failure to comply with the rule, permit the court to order the discovery, grant a continuance or enter such other order as it deems just under the circumstances. No continuance was asked nor was any other order requested. We see no issue of deprivation of the right to a fair and impartial trial in the court's handling of this matter.

Appellant complains that the court should have allowed the defense to impeach the State's witness, Shannon Scott, by proof of conviction for the crime of theft. HRS § 621-22, which was then in effect, required that before a witness is questioned about a conviction, it had to be shown to the satisfaction of the court that the witness had been convicted of one or more felonies or misdemeanors involving moral turpitude. No such showing was made here.

Appellant also argues:

The cumulative effects of the error resulted in a denial of appellant's constitutional right to a fair and impartial trial by a jury.

We see no errors by the court below and we see no deprivation of the constitutional right to a fair and impartial trial by jury.

Lastly, appellant argues that he was deprived of the right to effective assistance of counsel at the trial below. Upon a reading of

the record, we find no basis for this contention. Appellant's trial counsel's conduct was "within the range of competence demanded of attorneys in criminal cases." *State v. Antone*, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980). Affirmed.

*Leslie S. Fukumoto (Pyun, Kim & Okimoto* of counsel) for appellant.
*Arthur E. Ross,* Deputy Prosecuting Attorney, for appellee.