STATE OF HAWAII, Plaintiff-Appellee, *v.* CORNWELL H. S. HALEMANU, Defendant-Appellant

NO. 8115

(CRIMINAL NO. 54132)

AUGUST 31, 1982

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE ACOBA
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

Defendant-Appellant Cornwell H. S. Halemanu (Halemanu) appeals the jury's verdict finding him guilty of robbery in the first degree and kidnapping.

Halemanu contends:

I. That the lower court erred in denying his Rule 29, Hawaii Rules of Penal Procedure (1977) (HRPP), motion for judgment of acquittal made at the close of the State's evidence.

II. That the lower court erred in denying his Rule 29, HRPP, motion for judgment of acquittal made at the close of all the evidence.

III. That Count II of the indictment failed to state an offense and therefore must be dismissed.

We affirm.

At the trial in September 1980, seventeen-year-old Garrett Arashiro testified:

On January 28, 1980, he was in his car (a 1974 Pontiac Ventura with a "souped up engine") on Mott-Smith Drive waiting for the light to permit him to enter Nehoa Street. Halemanu leaned into the window of Arashiro's car from the passenger side and asked for a [cigarette] light. Arashiro handed him the car lighter and Halemanu lit his cigarette. Then, Halemanu reached in, unlocked the door, and got in. When Arashiro questioned Halemanu as to what he was doing, Halemanu told Arashiro "never mind" and asked him if he had any "dope." Arashiro answered no. Halemanu then told Arashiro to drive and started looking through the car's glove compartment. On Nehoa Street, Arashiro stopped the car. Halemanu again asked if he had any "dope." Arashiro again answered no. Halemanu kept searching through the glove compartment. Arashiro asked him to leave, but was told that Halemanu would tell him where to drive and that he was to drive where Halemanu told him to. Because of Halemanu's appearance, actions, and tone of voice,

Arashiro was scared. Arashiro drove into Manoa into a parking lot where Halemanu told him to park. Halemanu continued to search through the glove compartment, questioning Arashiro about its contents. Arashiro noticed that Halemanu had a folding razor in his left hand which was on his leg. Arashiro did not testify whether it was unfolded or folded. Halemanu asked Arashiro to give him his wristwatch, and Arashiro gave it to him. Halemanu exited the car and told Arashiro to get out also. Halemanu opened the trunk and searched through it and its contents. He asked Arashiro if it contained any "dope," and Arashiro answered no. Halemanu got back into the car but this time in the driver's seat and told Arashiro to get in, which he did. Halemanu found a pair of glasses on the car's visor and put them on. Halemanu asked Arashiro if he saw Halemanu's "blade" and began searching for it but found it in his pocket. Halemanu began driving in a hotrod fashion and left Manoa. While on Punahou Street, Halemanu told Arashiro not to try anything, not to wave to anyone or to try to get anyone's attention. From Nehoa Street, he drove up Tantalus Drive, fishtailing and driving fast. They came down Tantalus Drive through Papakolea, and at that point Halemanu asked Arashiro if he had any money and Arashiro answered no. Halemanu drove toward Liliha, by Chun Hoon Super Market, and when Arashiro saw some of his friends, Halemanu told him not to try anything and not to get their attention. Halemanu then entered onto the freeway heading in the Ewa (south) direction. When they passed Halawa, Arashiro noticed the speedometer read 105 miles per hour. Later, as Halemanu headed for Waianae, Arashiro noticed that the speedometer then read about 120 miles per hour. When Arashiro informed Halemanu that the car did not have enough fuel to make it to Waianae and back, Halemanu crossed the grassy medial strip and headed back towards Honolulu at a high rate of speed. He entered Sand Island, parked the car, and reopened the trunk. He pulled out a can of carburetor cleaner and a rag, sprayed the cleaner on the rag, and sniffed it. Then he instructed Arashiro not to try "anything funny" and to drive him back to Anianiku Street in Papakolea. Upon reaching Anianiku Street, Arashiro stopped the car and turned off the engine. A couple of Arashiro's friends saw him, suspected something was wrong, and came to his aid. After Arashiro told them what happened, they retrieved Arashiro's watch from Halemanu and sent him on his way.

Halemanu, 21 years old, testified and admitted that Arashiro did not give him permission to enter the car or to drive; that Arashiro told him to leave but that he did not because "[h]e didn't come to a complete stop and he didn't sound like he really wanted me to leave"; that he told Arashiro, "Take off the watch. I like wear 'um for the time being"; that he was carrying the razor "for [his] own protection"; that while in the car, he "was playing with" the razor but did not threaten Arashiro with it; that he never threatened Arashiro; that he told Arashiro not to try to signal for help; that he sprayed the rag and sniffed it without Arashiro's permission; that "[a]ll I was going do was just go for one ride and after I felt like driving the car and I was going go back home, stop the car, give him back the watch, tell him I sorry. I never mean to hurt him in any way, and I just was going give him back the car and that was it"; that "[i]t's just at the time when I was in the car that I was feeling like I was a loser since the time I got in the car so I really didn't care what I was saying because I knew I was going get caught for what I did."

The jury was instructed on the offenses of kidnapping, unlawful imprisonment in the second degree, robbery in the first degree, and terroristic threatening in the second degree.

I.

Halemanu contends that the lower court erred in denying his Rule 29, HRPP, motion for judgment of acquittal made at the close of the State's evidence. After this motion was denied, Halemanu testified. Consequently, we must decide whether the introduction of evidence by Halemanu after his motion was denied was a waiver of that motion. This issue appears to have been present in *State v. Alfonso*, 65 Haw. 95, 648 P.2d 696 (1982); *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970), but was not discussed. There is authority on both sides of this question. *See* 8A MOORE'S FEDERAL PRACTICE: *Criminal Rules* ¶ 29.05 (1981); 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 463 (1969).

We agree with the authority which favors application of the waiver doctrine in situations such as in this case and hold that when Halemanu testified, he waived any error in the prior denial of his motion for acquittal.

## II.

Halemanu contends that the lower court erred in denying his Rule 29, HRPP, motion for judgment of acquittal made at the close of all the evidence.

Upon an appeal of the denial of such a motion for judgment of acquittal, the issue before this court is whether, upon the evidence, giving full play to the right of the trier of fact to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Rocker, supra; State v. Manipon,* 2 Haw. App. 499, 634 P.2d 598 (1981). Stated another way, the issue is whether the record contains substantial evidence to support the decision. *State v. Summers,* 62 Haw. 325, 614 P.2d 925 (1980); *State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967).

### A.

Halemanu contends that there is insufficient evidence that he was armed with a dangerous instrument.

The Hawaii Penal Code generally defines "dangerous instrument" as follows:

§ 707-700 *Definitions of terms in this chapter.* In this chapter, unless a different meaning plainly is required:

\* \* \*

(4) "Dangerous instrument" means any firearm, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or *is intended* to be used is known to be capable of producing death or serious bodily injury[.] [Emphasis added.]

However, for purposes of the robbery in the first degree statute, the Hawaii Penal Code defines "dangerous instrument" as follows:

§ 708-840 *Robbery in the first degree.* (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

\* \* \*

(b) He is armed with a dangerous instrument and:
\* \* \*

(ii) He threatens the imminent use of force against the

person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

(2) As used in this section, "dangerous instrument" means any firearm, or other weapons, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or *threatened* to be used is capable of producing death or serious bodily injury. [Emphasis added.]

In this case, the only instrument in evidence is a 1½ inch, single-edged razor blade attached to a metal backing almost two inches long which folds into a plastic holder about 2-5/16 inches long. Unquestionably, the instrument is capable of producing serious bodily injury. However, Halemanu contends that there is no evidence that he threatened to use it to cause Arashiro death or serious bodily injury.

A threat is a communicated intent to inflict harm. BLACK'S LAW DICTIONARY 1327 (Rev. 5th ed. 1979). Intent may be proven and often must be proven by circumstantial evidence and reasonable inferences to be drawn therefrom. *State v. Hernandez*, 61 Haw. 475, 605 P.2d 75 (1980); *State v. Wilkins*, 1 Haw. App. 546, 622 P.2d 620 (1981).

In our view, a reasonable mind might fairly conclude beyond a reasonable doubt from the evidence that Halemanu threatened Arashiro with his razor.

### B.

In light of the dissent, *sua sponte* we note two issues which Halemanu did not raise at trial or in his points on appeal. First, when the trial judged instructed the jury, by agreement he defined "dangerous instrument" under Hawaii Revised Statutes (HRS) (1976, as amended) section 707-700(4)'s definition rather than under HRS (1976) section 708-840(2)'s definition. Thus, he instructed the jury as follows:

"Dangerous instrument" means any firearm or other weapon, device, instrument, material, or substance whether animate or inanimate which in the manner it is used or *intended* to be used is known to be capable of producing death or serious bodily injury. [Emphasis added.]

Second, although the difference between robbery in the first degree (HRS section 708-840 (1976)) and robbery in the second

degree (HRS section 708-841 (1976)) is the presence or absence of a dangerous instrument, the trial judge was not requested to, and he did not, instruct the jury about robbery in the second degree.

Although an error in the instructions to which no objection is made at trial may not be assigned as error on appeal (Rule 30(e), HRPP (1977)) and an error in the instructions which is not properly cited in the points on appeal in compliance with Rule 3(b)(5), Rules of the Supreme Court (RSC) will not be considered on appeal, *State v. Shon*, 47 Haw. 158, 385 P.2d 830 (1963); *State v. Pacariem*, 2 Haw. App. 277, 630 P.2d 650 (1981), appellate courts *may* notice plain errors or defects affecting substantial rights which were not brought to the attention of the court. Rule 52(b), HRPP (1977).

In this case, however, we find no plain error.

When jury instructions (or the omission thereof) are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading. *State v. Reiger*, 64 Haw. 510, 644 P.2d 959 (1982); *State v. Lincoln*, 3 Haw. App. 107, 643 P.2d 807 (1982).

In this case, although the trial judge erred in his instruction defining "dangerous instrument," he correctly instructed the jury that the State was required to prove beyond a reasonable doubt that Halemanu, while committing theft and while armed with a dangerous instrument, *threatened* the imminent use of force against Arashiro and that he did so with the intent to compel acquiescence to the taking of or escaping with the property that was the subject of the theft.

Consequently, to find Halemanu guilty, the instructions required the jury to find that (1) while he was committing and while he was armed with a weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it was used or *intended* to be used was known to be capable of producing death or serious bodily injury; (2) Halemanu *threatened* the imminent use of force against Arashiro; and (3) he did so with intent to compel acquiescence to the taking or escaping with the stolen property.

Halemanu might argue that it could be that the jury found from the evidence that although he *intended* to use the razor to cause serious bodily injury, he *threatened* the imminent use of force by some means other than with the razor and thus the razor was not a

dangerous instrument for purposes of the first degree robbery count. We disagree. The evidence indicates that if Halemanu threatened the imminent use of force against Arashiro, he did so with the razor.

*A fortiori*, the trial judge did not err in not instructing the jury about robbery in the second degree. Section 701-109(5), HRS (1976), provides that the court is not obligated to instruct the jury with respect to robbery in the second degree unless there is a rational basis in the evidence for a verdict acquitting Halemanu of robbery in the first degree and convicting him of robbery in the second degree.[1] As noted above, the evidence in this case allowed only two choices. Either Halemanu was guilty of robbery in the first degree or he was not guilty of robbery at all.

## C.

Halemanu further contends that there is insufficient evidence of the kidnapping.

Halemanu was charged with kidnapping under HRS section 707-720(1)(c) (1976) which provides:

§ 707-720 *Kidnapping.* (1) A person commits the offense of kidnapping if he intentionally restrains another person with intent to:

\* \* \*

(c) Facilitate the commission of a felony or flight there-after[.]

Halemanu admits that the felony was the taking of the watch but contends that the restraint did not occur until he assumed control of the car and directed Arashiro to get back in the car.

Halemanu misreads the statute. Section 707-720(1)(c), HRS, does not require the intent to facilitate the commission of a felony or flight therefrom to exist at the start of the restraint. It only requires that the intent exist at any time during the restraint. *Cf. People v. Tribble,* 94 Cal. Rptr. 613, 484 P.2d 589 (1971).

---

[1] The rule in HRS section 701-109(5) (1976) concerning instructions on lesser included offenses appears to be different from the rule concerning instructions on theories of defense as stated in *State v. O'Daniel,* 62 Haw. 518, 616 P.2d 1383 (1980).

Moreover, HRS section 707-700(5) provides that restraint means to restrict (by force or threat) a person's movement in such a manner as to substantially interfere with his liberty. Here, there is substantial evidence that Halemanu restrained Arashiro from the moment Halemanu entered Arashiro's car and told Arashiro to drive where Halemanu told him to.

Halemanu further contends that the statute requires the restraint to facilitate the commission of a felony or flight thereafter. *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976). Again, he misreads the statute. It only requires an intent to facilitate, not actual facilitation.

### III.

Halemanu contends that Count II of the indictment fails to state an offense and must therefore be dismissed.

Count II alleges:

COUNT II: On or about the 28th day of January, 1980, in the City and County of Honolulu, State of Hawaii, CORNWELL H. S. HALEMANU, while in the course of committing theft, and while armed with a dangerous instrument, to wit, a straight edge razor, did threaten the imminent use of force against Garrett Arashiro with the intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree in violation of Section 708-840(1)(b)(ii) of the Hawaii Revised Statutes.

As in *State v. Tuua,* 3 Haw. App. 287, 649 P.2d 1180 (1982), the first time Halemanu raised this issue is on appeal.

As in *Tuua,* this case presents no constitutional issue. Halemanu knew of the nature and cause of the accusation. In his opening statement, Halemanu's counsel advised the jury that his client's defense was that his conduct did not amount to the offenses of robbery and kidnapping. In his instructions to the jury, the trial judge quoted HRS section 708-840(b)(ii) (1976) verbatim.

The State's proposed instruction no. 4 stated in relevant part:

There are three material elements to this offense * * *

First: That the Defendant while in the course of committing theft was armed with a dangerous weapon;

Second: That the Defendant did threaten the imminent uee [sic] of force against people present at the scene of the theft; and

Third: That the Defendant did so threaten with the intent to compel acquiescence to the taking of or escaping with the property that was the subject of the theft.

The trial judge amended paragraphs first, second, and third to read as follows:

First: That the Defendant while in the course of committing theft was armed with a dangerous instrument;

Second: That the Defendant did threaten the imminent use of force against Garrett Arashiro; and

Third: That the Defendant did so threaten acquiescence to the taking of or escaping with the property that was the subject of the theft.

Defense counsel's only objection to the instruction which was given as amended was that "the instruction should state that the threats be made intentionally." The amended instruction was given over that objection.

As in *Tuua*, the issue we must decide is whether Count II satisfies the requirement of Rule 7(c), HRPP (1977).

*Tuua* is precedent for the rule that common sense compels the inference from the explicit allegations that the imminently threatened force was injury to Arashiro with the straight-edge razor and that Arashiro was present when the threat was made. Consequently, we hold that Count II of the indictment states the offense of robbery in the first degree.

Affirmed.

*Edward K. Harada*, Law Student Intern, and *Alvin T. Sasaki*, Deputy Public Defender, (*Jonathan J. Ezer*, Deputy Public Defender, on reply brief), for defendant-appellant.

*Vicente F. Aquino*, Deputy Prosecuting Attorney, for plaintiff-appellee.

## DISSENTING OPINION OF CIRCUIT JUDGE ACOBA

I believe the conviction should be reversed and remanded for a new trial on two grounds and, therefore, I respectfully dissent.

## I.

The first ground for remand is the trial court's incorrect instruction on the robbery element of being "armed with a dangerous instrument." Robbery in the first degree is defined in the Penal Code's chapter on "Property Offenses." Under that definition, proof of the "dangerous instrument" element is required:

§ 708-840 *Robbery in the first degree.* (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

. . . .

(b) *He is armed with a dangerous instrument* and:

. . . .

(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property. [Emphasis added.]

"Dangerous instrument" is defined in the same section as follows:

§ 708-840

. . . .

(2) *As used in this section,* "dangerous instrument" means any firearm, or other weapon, device, instrument, material, or substance whether animate or inanimate, which in the manner it is used or *threatened to be used* is capable of producing death or serious bodily injury. [Emphasis added.]

The court did not give this definition of "dangerous instrument" to the jury. Instead, it gave the definition of "dangerous instrument" found under the chapter on "Offenses Against Persons." That section states:

§ 707-700

. . . .

(4) "Dangerous instrument" means any firearm or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is *intended to be used* is known to be capable of producing death or serious bodily injury[.] [Emphasis added.]

The instrument in evidence was a razor. No party contends, and there is no evidence, that the razor was "used."[1] Under the correct definition then, the State was required to prove, and the jury was required to find, that the razor was "threatened to be used" in the manner prescribed by HRS § 708-840(2), beyond a reasonable doubt. But the jury was never instructed that this was the legal standard to apply. Thus, the jury did not have the correct standard by which to measure the proof adduced on that issue. "It is well settled that the trial court must correctly instruct the jury on the law. . . . This requirement is mandatory to insure the jury has proper guidance in its consideration of the issues before it." *State v. Nakamura*, 65 Haw. 74, No. 7823, slip op. at 5 (July 1, 1982), quoting *State v. Feliciano*, 62 Haw. 637, 643, 618 P.2d 306, 310 (1980).

Of course, an "instruction may properly be refused where the same proposition is adequately covered in another instruction that is given. . . ." *Nakamura, supra,* at 5, quoting *State v. Stuart,* 51 Haw. 656, 660-61, 466 P.2d 444, 447 (1970). That is not the case here. Quite simply, the trial court intended to correctly instruct the jury on the definition of "dangerous instrument" but gave the wrong definition of that element.

True, the instructions must be considered in their entirety to determine whether error was committed. *Feliciano, supra,* 62 Haw. at 641, 618 P.2d at 309. But, considered as a whole, the instructions do not cover the missing definition as the majority contends. The trial court did instruct the jury that it must find the defendant threatened the "imminent use of force" against the complaining witness before it could convict. However, this instruction related to the "imminent use of force" element. That element is separate and distinct from the "dangerous instrument" element which requires a finding of threatened use of such an instrument.[2] For HRS § 708-840(1)(b)(ii)

---

[1] The trial transcript indicates the following:
Q. He [the defendant] never actually hurt you, is that correct?
A. [By complaining witness] Physically, no.

[2] Also Court's Instruction No. 18 (State's proposed Instruction No. 4) stated:
*There are three material elements to this offense. . . .:*
First: *That the Defendant while in the course of committing theft was armed with a dangerous instrument;*

provides:

> (b) He is armed with a dangerous instrument *and:*
>
> (ii) He threatens the imminent use of force against . . . anyone who is present. . . . [Emphasis added.]

Nor can the erroneous definition of a "dangerous instrument" as one that is "intended" to be used in the culpable manner be fairly equated with the definition of one which is "threatened" to be used in that manner. Intent is a state of mind. *See* HRS § 702-206. A threat is the *communication* of an intent. Black's Law Dictionary 1327 (5th ed. 1979). The difference in definition was expressly incorporated into the Penal Code by the drafters. It is a difference which affects the legal standard applied to the evidence by the jury.

The prejudicial effect which would follow from equating the two definitions is revealed by the record here. The jury was told that the "dangerous instrument" element was satisfied by proof that the defendant "intended" to use it in the culpable manner. Applying this erroneous statement of law, the jury convicted the defendant. But the jury should have been told that it was required to find the defendant "threatened" the razor's use in the culpable manner. Had it been correctly instructed, the jury would have had to consider evidence contrary to such a finding.

For the complaining witness himself testified the defendant did not threaten him with the razor:

> Q. Did he *ever* threaten you with the razor?
>
> A. No, he did not.
>
> [Emphasis added.]

The complaining witness was never asked whether he felt threatened by the razor, nor did he ever say that he felt threatened by the razor. Indeed, in the context of his entire testimony, the defendant's appearance and voice appeared to be of primary significance to the complaining witness:

> Q. Now, when you say you were scared, why were you scared?

---

Second: *That the Defendant did threaten the imminent use of force* against Garrett Arashiro; and,

Third: That the Defendant did so threaten Garrett Arashiro with the intent to compel acquiescence to the taking of or escaping with the property that was the subject of the theft. ]Emphasis added.]

A. Appearance; fact that he entered my car without permission; tone of voice.

Q. When you say "tone of voice," can you describe his tone of voice or mimic his tone of voice?

A. Describing it, it was a tone that I wouldn't argue, you know. If he told me to do it, I wasn't about to do anything else.

Q. For instance, what is one of the things that he told you?

A. To drive and he was going to tell me where to drive.

Q. When he asked you — when he told you to drive, can you mimic the tone of voice he used when he said to drive?

A. I don't remember.

Q. Okay. But you said — you described it as menacingly?

A. More so.

.  .  .  .

Q. Did Cornwell [the defendant] ever tell you he was going to hurt you in any way?

A. No.

Q. You indicated that at no time did you attempt to resist because you were afraid of the appearance of Cornwell, is that correct?

A. That's correct.

.  .  .  .

Q. Okay. Did he ever tell you he was going to hurt you in any way?

A. No, he did not.

Q. He never actually hurt you, is that correct?

A. Physically, no.

.  .  .  .

Q. Garrett, besides the appearance of Cornwell, you mentioned that you were afraid of him because of his tone of voice, is that correct?

A. That's correct.

Q. Did you think he would hurt you if you didn't follow his directions?

A. Personally, that's — that's how I felt.

Contrary to the majority's conclusion, then, the foregoing excerpts from the trial indicate a rational basis for finding that the threat of force was conveyed by the defendant's appearance and

voice, rather than by a razor. If that finding were made by the jury, the defendant would have been entitled to an acquittal on robbery in the first degree for failure to prove the "dangerous instrument" element.

In any event, it is not for the appellate court to determine that one finding is correct to the exclusion of another finding where an erroneous instruction is at issue. The majority, however, adopts that approach in order to reach its conclusion that the correct instruction does not have to be given. That approach is unsupportable on two grounds. First, the appellate court "must construe the evidence in the case in a light most favorable to the appellant in determining whether or not the instruction should be given." *State v. O'Daniel,* 62 Haw. 518, 528, 616 P.2d 1383, 1390·91 (1980). This the majority failed to do. Second, whether or not the defendant was armed with a "dangerous instrument" as correctly defined is a question for the jury, not the appellate court. At trial the wrong instruction could only have "left an erroneous impression in the minds of the jurors." *State v. Laurie,* 56 Haw. 664, 672, 548 P.2d 271, 277 (1976). Thus, the majority approach would foreclose the jurors from deciding a question which was theirs to decide. Rule 1102, Hawaii R. of Evid.

Because a rational basis existed for acquitting the defendant of robbery in the first degree, an instruction on the lesser-included offense of robbery in the second degree should have been given. Where a rational basis for acquitting the defendant of a charge and convicting him of an included offense exists, the court should give an instruction relating to that offense. HRS § 701-109(5).[3] Robbery in the second degree may be proved by the same elements as robbery in the first degree, except being armed with a dangerous instrument is not an element of the former. *See* HRS § 708-841(a) and (b). The parties did not request a second degree robbery instruction. However, Rule 1102, Hawaii R. of Evid., mandates that "the court shall instruct the jury regarding the law applicable to the facts of the case. . . ." And the defendant "is entitled to an instruction on every defense . . . having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury,

---

[3] The lesser-included offense doctrine aids the prosecution, the defendant and society as well. *State v. Kupau,* 63 Haw. 1, 620 P.2d 250 (1980).

no matter how weak, inconclusive or unsatisfactory the evidence may be." *O'Daniel, supra,* 62 Haw. at 527-28, 616 P.2d at 1390 (emphasis in original). Hence, the error resulting from the failure to give the correct instruction on the "dangerous instrument" instruction was magnified by the failure to give an instruction on the lesser-included offense of robbery in the second degree.

The incorrect "dangerous instrument" instruction was not claimed as error. Rule 52, HRPP, however, allows the court to notice plain errors or defects affecting substantial rights. The erroneous instruction here affected substantial rights. The error cannot be said to be harmless beyond a reasonable doubt. *State v. Pokini,* 57 Haw. 26, 30, 548 P.2d 1402, 1405 (1976), *cert. denied,* 429 U.S. 963 (1976).

The kidnapping conviction rested on proving the commission of a felony. The felony involved was robbery in the first degree. Because that charge should be remanded for retrial, the kidnapping charge should also be remanded.

## II.

The second ground which independently requires remand is the State's failure to allege the essential elements of the robbery charge in the indictment.

In pertinent part, the statute states, "[a] person commits the offense of robbery in the first degree if, in the course of committing theft . . . [h]e threatens the imminent use of force against the person of *anyone who is present.* . . ." HRS § 708-840(1)(b)(ii) (emphasis added).

The indictment charged that the defendant in the course of committing theft and "while armed with a dangerous instrument, to wit, a straight edge razor, did threaten the imminent use of force against [the named person]. . . ."

The indictment did not allege that the named person was a person who was "present" at the time of the theft.

The "presence" element is traceable to prior Hawaii law. "[T]he Code's definitions of the [robbery] offenses are substantively similar to those of prior Hawaii law. . . ." Commentary to HRS §§ 708-840 and 708-841. Under prior Hawaii law, robbery was defined as the " 'stealing of a thing from the *person of another or from his custody or*

*presence,* by force or putting him in fear.' " *Id.,* quoting HRS § 765-1 [1968] (emphasis added).

The instant indictment does not indicate that the taking of property was from the named person by putting him in fear or from the custody or presence of the named person by putting him in fear. Indeed, it does not indicate that the threat was against a person present contemporaneously with the taking of property, an allegation necessary under the "presence" requirement of prior law and retained in the Penal Code. Under the express terms of the statute, the "presence" of the person threatened must be proved. Without such proof, robbery is not established. An essential element is one which must be proved to establish the crime. *Cf. State v. Nases,* 65 Haw. 217, 649 P.2d 1138 (1982). Because "presence" must be proved to establish robbery, "presence" is an essential element. An indictment "must sufficiently allege all of the essential elements of the offense charged." *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977). Presence of the threatened person must, therefore, be alleged in a robbery indictment.

The majority contends that the element of "presence" may be inferred by reference to a statutory provision outside of the indictment itself, citing *State v. Tuua,* 3 Haw. App. 287, 649 P.2d 1180 (1982). Under this approach, the court must look to the statutory definition of "dangerous instrument." That definition indicates a "dangerous instrument" is one which is "threatened" to be used. From there, the threat to use a razor is read with the indictment allegation of an imminent use of force. It is said that together these factors raise the probable inference that the named person against whom force was imminently threatened was present. The instant indictment, therefore, requires the court to look beyond the text in search of saving statutory language which will give rise to a range of probabilities from which the missing element may be inferred.

Rule 7(c), HRPP, however, mandates that "the charge *shall* be a plain, concise and definite statement of the essential facts constituting the offense charged." (Emphasis added.) An indictment whose meaning must be ascertained by the aforementioned process is not "plain," "concise" or "definite." Nor does it contain the "essential facts." The indictment patently violates Rule 7(c), HRPP.

In addition, the court should not be required to, nor a party put to the risk of, searching beyond the indictment itself to ascertain its

meaning:

> It is essential that an indictment must allege all of the material facts and circumstances embraced in the statutory definition of the offense, and if any essential element of the crime is omitted such omission may not be supplied by intendment or implication. The charge must be made directly and not inferentially or by way of recital.

*U.S. v. American Oil Co.,* 249 F. Supp. 799, 806 (D.N.J. 1966).

And the controlling precedent in this jurisdiction would require that an essential element be expressly stated in the indictment. In *Jendrusch, supra,* the defendant was charged with causing public inconvenience, annoyance or alarm. The charge also stated the defendant did make "unreasonable noise or offensively coarse utterance, gesture or display or address abusive language to any person present. . . ." 58 Haw. at 280, 567 P.2d at 1243. The Hawaii Supreme Court held that the charge should have referred to "physical" inconvenience.

Arguably, the charge could have been saved because "noise, . . . gesture or display or . . . abusive language" might reasonably infer "physical" inconvenience to the public. But the court required the express and specific use of the term "physical":

> Without the averment that defendant's conduct resulted or threatened to result in *physical* inconvenience, the complaint was insufficient to charge an offense.

*Id.* at 282, 567 P.2d at 1244 (emphasis in original).

Further, the court stated:

> Where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensive to persons of common understanding, a charge drawn in the language of the statute is sufficient.

*Id.* at 283, 567 P.2d at 1245.

Here, the statute set forth all essential elements of robbery with reasonable clarity in terms readily comprehensive to persons of common understanding. But the charge was not drawn in the language of the statute.

In *State v. Faulkner,* 61 Haw. 177, 599 P.2d 285 (1979), the charge failed to allege the state of mind element. The court stated that "[i]ntent is an essential element. . . . No allegation of intent was

made." *Id.* at 178, 599, P.2d at 286. Similarly, the essential element of "presence" here was not alleged.

Finally, the indictment cannot be sustained under an application of the "fair construction" test. That test would sustain an indictment "even if an essential averment is *faulty in form*, if by fair construction it *may be found within the text*." 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 125 at 233-34 (1969) (emphasis added).

Here, the essential averment is not faulty "in form," it is entirely absent. The fault here is not one of form, but substance:

> We are aware that liberality is the guide today in testing the sufficiency of an indictment, but this applies to matters of form and not of substance. We cannot dispense with the requirement that the indictment charge all essential ingredients of a crime.

*U.S. v. Tornabene,* 222 F.2d 875, 878 (3rd Cir. 1955).

. And as indicated above the averment cannot be found "within the text" of the indictment. Instead, reference must be made to a statutory section which was not cited or referred to in the indictment itself.

The indictment, therefore, failed to allege the essential elements of the charge. This error was raised for the first time on appeal. Such an error may be noticed at any time. Rule 12(b)(2), HRPP. "[T]he defect is ground for reversal, even when raised for the first time on appeal." *Jendrusch, supra,* 58 Haw. at 281, 567 P.2d at 1244. The indictment herein should be dismissed with leave granted the State to reindict, the defendant being held in custody or on bail as may be set by the trial court pending reindictment. *See* Rule 12(g), HRPP; *Dawson v. Lanham,* 53 Haw. 76, 486 P.2d 329 (1971).

For the foregoing reasons, I would reverse and remand.