In the Interest of JOHN DOE, born on November 22, 1964, Juvenile-Appellant

NO. 8251

(NO. FC-J 80-34566-A)

SEPTEMBER 1, 1982

BURNS, C.J., HEEN, J., AND
CIRCUIT JUDGE WAKATSUKI ASSIGNED
BY REASON OF VACANCY

326

OPINION OF THE COURT BY BURNS, C.J.

In proceedings under Hawaii Revised Statutes (HRS) section 571-11(1) (1976, as amended), the juvenile-appellant was charged with (1) terroristic threatening and (2) theft in the third degree. At trial the judge found "[t]hat the material allegations have been proved." The juvenile-appellant appeals only the finding with respect to terroristic threatening. We affirm.

On appeal, juvenile-appellant contends:

Issue No. 1: That the charge does not state a criminal offense because (a) it does not allege an act of threatening and (b) it contains no criminal classification provision and no penalty provision.

Issue No. 2: That the trial judge erred in denying his motions for judgment of acquittal.[1]

---

[1] This case is governed by the Hawaii Family Court Rules (HFCR) and not by the Hawaii Rules of Penal Procedure (HRPP). *See* Rule 81, HFCR (1977 and 1982), and

Issue 1(a) was not raised in the trial court. It is raised for the first time on appeal. Issue 1(b) was raised in the trial court after the trial in a "motion for Reconsideration of the Decision."

The "Petition by Police Officer" alleges:

On or about the 28th day of February 1980, in the City and County of Honolulu, State of Hawaii [juvenile-appellant] *did* with the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person, [Child 1], by word or conduct, *to cause* bodily injury to that person or serious damage to property of another, thereby committing the offense of Terroristic Threatening in violation of Section 707-715(1) of the Hawaii Penal Code. [Emphasis added.]

The statutes creating the offense provide:

§ 707-715 *Terroristic threatening, defined.* A person commits the offense of terroristic threatening if he *threatens,* by word or conduct, *to cause* bodily injury to another person or serious damage to property of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or

(2) With intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation. [Emphasis added.]

§ 707-716 *Terroristic threatening in the first degree.* (1) A person commits the offense of terroristic threatening in the first degree if he commits terroristic threatening:

(a) By threatening another person on more than one occasion for the same or a similar purpose; or

(b) By threats made in a common scheme against different persons; or

(c) Against a public servant; or

(d) With the use of a dangerous instrument.

(2) Terroristic threatening in the first degree is a class C felony.

---

Rule 54(b), HRPP (1977).

Although the Hawaii Family Court Rules do not contain a rule similar to Rule 29, HRPP (1977), an accused in family court proceedings under HRS section 571-11(1) has the same right to move for a judgment of acquittal as does an accused in a proceeding to which Rule 29, HRPP, is applicable.

§ 707-717 *Terroristic threatening in the second degree.* (1) A person commits the offense of terroristic threatening in the second degree if he commits terroristic threatening other than as provided in section 707-716.

(2) Terroristic threatening in the second degree is a misdemeanor.

The statutes and rules governing the validity of petitions in children's cases are similar to those governing the validity of indictments in adult cases. *Compare, State v. Tuua,* 3 Haw. App. 287 (1982).

Section 571-21(d), HRS (1976), provides in relevant part: "In children's cases, under section 571-11(1) . . . the petition . . . shall set forth plainly (1) the facts which bring the child within the purview of this chapter. . . ."

Section 571-11, HRS (1976, as amended), provides in relevant part:

[T]he [family] court shall have exclusive original jurisdiction in proceedings:

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state or local law or municipal ordinance.

Rule 125 of the Hawaii Family Court Rules (1977) provides:

RULE 125. CONTENTS OF PETITION. The petition shall set forth, in plain language and with reasonable particularity, the date, place, and manner of the acts alleged and the law or standard of conduct allegedly violated.

The constitutional requirements are also similar except that children are not entitled to grand jury action.

*ISSUE NO. 1(a)*

The person who drafted the petition neglected to insert the verb "threaten" where it should have been inserted.

Although the making of a threat is an essential element of the offense of terroristic threatening, in this case the omission of the verb does not create a constitutional problem. No grand jury was involved in this case. At all relevant times juvenile-appellant knew the nature and cause of the accusation against him. In fact, his

defense was that the State could not prove his "intent to terrorize."

The issue we must decide is whether the petition satisfied the requirements of HFCR 125. Did it "set forth, in plain language and with reasonable particularity, the date, place, and manner of the acts alleged and the law or standard of conduct allegedly violated?"

The petition explicitly states that the offense charged is "Terroristic Threatening." Unlike *Tuua*, this is a case where the words in the name of the offense charged reasonably supply the missing element.

In our view, a person charged with the crime of "terroristic threatening" is thereby reasonably informed that he is charged with making some kind of an unlawful threat. To hold otherwise would give technicalities priority over common sense which we will not do unless we have no alternatives. *See State v. Reiger*, 64 Haw. 510, 644 P.2d 959 (1982).

### ISSUE NO. 1(b)

Juvenile-Appellant contends that the State should have charged him with violating not only HRS section 707-715, but also sections 707-716 or 707-717.

The State responds that the charge "clearly apprises [Juvenile-Appellant] that he could be convicted of the lowest form of terroristic threatening. . . ." We agree with the State.

Certainly, it is good practice to cite in the charge the penalty section of the statute defendant is alleged to have violated, 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 124 (1969), and the State did not follow good practice in this case. However, we think the thought behind that portion of Rule 7(c) of the Hawaii Rules of Penal Procedure (1977) which says "[f]ormal defects, including error in the citation or its omission, shall not be ground for dismissal of the charge or for reversal of a conviction if the defect did not mislead the defendant to his prejudice" applies in family court situations. Consequently, we conclude that the State's failure to cite HRS section 707-717 was an inconsequential defect of form which could not have reasonably misled juvenile-appellant to his prejudice.

### ISSUE NO. 2

Juvenile-Appellant contends that the trial judge erred in denying his motions for judgment of acquittal.

At the close of the State's evidence, juvenile-appellant moved for a judgment of acquittal. After the judge denied the motion, juvenile-appellant testified. At the close of all the evidence, juvenile-appellant made another motion for judgment of acquittal. We hold that when juvenile-appellant testified he waived his prior motion for judgment of acquittal. *State v. Halemanu,* 3 Haw. App. 300 (No. 8115, August 31, 1982) (Acoba dissenting). Thus, our review is limited to the trial court's denial of juvenile-appellant's motion for acquittal made at the close of all the evidence.

At trial, juvenile-appellant's counsel argued:

[DEPUTY PUBLIC DEFENDER]: * * * If every kid who said, "You want me to slap your head," was in the court for terroristic threatening, I think the courts would never get through the end of the day. I feel that it's just making a mountain out of a mole hill even though I do not deny the existance [sic] of the mole hill. But I think this statute was designed to deal with much more serious alarm and with much more serious kinds of threats and conduct.

On appeal his counsel argues that juvenile-appellant should have been charged with a violation of HRS section 711-1106:

§ 711-1106 *Harassment.* (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, he:

(a) Strikes, shoves, kicks, or otherwise touches a person in an offensive manner or subjects him to offensive physical contact; or

(b) Insults, taunts, or challenges another person in a manner likely to provoke a violent response; or

(c) Makes a telephone call without purpose of legitimate communication; or

(d) Makes repeated communications anonymously, or at extremely inconvenient hours, or in offensively coarse language.

(2) Harassment is a petty misdemeanor.

However, the issue is not whether juvenile appellant was charged under the most appropriate statute. The issue before the trial court and this court is whether, upon the evidence, a reasonable mind, giving full play to the right of the trier of fact to determine credibility, weigh the evidence, and draw justifiable inferences of fact,

might fairly conclude guilt beyond a reasonable doubt. *State v. Rocker,* 52 Haw. 336, 475 P.2d 684 (1970). Stated another way, the issue is whether the record contains substantial evidence to support the decision. *State v. Summers,* 62 Haw. 325, 614 P.2d 925 (1980); *State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967).

The issue in this case is whether the record contains substantial evidence of juvenile-appellant's "intent to terrorize." To decide that question, we must define "terrorize."

Juvenile-Appellant urges us to adopt the definition stated in *Armstrong v. Ellington,* 312 F. Supp. 1119, 1126 (W. D. Tenn. 1970).

"Intimidating" in the statute is an alternative for "terrorizing", but the latter word refers to a stronger state of fear. It means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind. .

We think that the applicable definition was stated in the commentary on HRS section 707-715 when it was originally enacted in 1972.

*This section is addressed to conduct causing serious alarm for personal safety,* or the disruption of public services or activities. In the first instance, it is an offense against the individual of substantial magnitude and danger, even allowing for the lack of any actual harm. This danger is recognized for two reasons. (1) It is easily seen that people who are attempting to avoid what they believe to be a serious harm may often take action so precipitous as to harm themselves. Where the actual harm occurs, the threatener may be guilty of a more serious offense. But where the harm does not occur, this section permits conviction for the inchoate threat. (2) The civil law has come to recognize the validity of psychological trauma; recovery may now be had for the intentional infliction of such injury even though the conduct of the offender had no physical connection with the victim. If such conduct constitutes a recognized substantial danger, it follows that a penal sanction may appropriately be imposed for conduct which intentionally or recklessly creates the danger. * * *

[B]ecause threats represent far less of a danger than does consummation of the criminal objective, the offense is only graded as a misdemeanor. *The sanction is more commensurate with the inconvenience of personal apprehension of danger,* or of public disruption, *than with the possibility of the threatened evil being accom-*

*plished.* In the latter case, of the accomplished evil, the various attempt and substantive sections will deal more severely with the conduct and results involved. [Emphasis added.]
Commentary on HRS section 707-715, Hawaii Penal Code (1976).

Thus, the precise issue is whether the record contains sufficient evidence of juvenile-appellant's intent to cause or of his reckless disregard of the risk of causing Child 1 serious alarm for his personal safety. We hold that it does.

Intent may be proven and often must be proven by circumstantial evidence and reasonable inferences to be drawn therefrom. *State v. Hopkins,* 60 Haw. 540, 592 P.2d 810 (1979); *State v. Wilkins,* 1 Haw. App. 546, 622 P.2d 620 (1981).

The substantial evidence supporting the trial court's decision is as follows:

Child 1, age 14, an eighth grader, testified: After school on February 28, 1980, he and Child 2 were walking on Punahou Street, makai (southwest) of Wilder Avenue, and were proceeding in a makai (southwest) direction toward King Street to catch a bus. Child 1 was holding a basketball. They approached an area where juvenile-appellant, an eleventh grader at a school other than Children's 1 and 2, was leaning on a wall and juvenile-appellant said to them, "I'd like to speak to you." Children 1 and 2 kept walking but after they had passed juvenile-appellant, he said to Child 2 in a "shouting kind" of manner, "I'd like to speak to your friend." Children 1 and 2 ignored him and kept walking. Juvenile-Appellant followed them. Thereafter, juvenile-appellant said, "I'd like to show you something." Children 1 and 2 asked, "What?" Juvenile-appellant replied, "No, in the bushes." Children 1 and 2 kept on walking. Then:

A. [H]e kinda stopped us and he goes, "You want me slap your head?"

Q. You say that he kinda stopped you. What do you mean by that?

A. Okay. [Child 2] and I were walking. We were just about to go across the street and he kinda held our shoulder, just started talking to us some more.

Q. Did he physically touch you?

A. Yes.

Q. Did he also physically touch [Child 2]?

A. I think so.

Q. Then what happened?

A. Okay. Then we kept on walking and then he go, "Why don't you listen to me?" And he says, "Do you want me to punch you right now, in front of everybody?"

Children 1 and 2 kept walking. Juvenile-Appellant followed them and kept saying he would like to speak to them in the bushes. Child 1 was scared and he could tell that Child 2 was too. Children 1 and 2 finally arrived at the bus top on the makai (southwest) side of King Street. The bus arrived. Child 2 got on it. Juvenile-Appellant "kinda grabbed" for Child 1's basketball but Child 1 pulled it away and got on the bus.

Child 2, age 13, a classmate of Child 1, generally confirmed Child 1's testimony but added some facts. He and Child 1 were walking on the Koko Head (east) side of Punahou Street. He and Child 1 encountered juvenile-appellant about two apartment buildings makai (southwest) of Wilder Avenue. Juvenile-Appellant was leaning against the inside of an apartment building's boundary wall when he first asked them to come in to speak to him. All the way to the bus stop on King Street, juvenile-appellant "was saying I just want to speak to you. Come in here, I want to show you someting" and Children 1 and 2 kept responding, "No, we have to go home." When Children 1 and 2 got on the bus, juvenile-appellant "tried to follow us but he didn't have a quarter so he tried to ask the lady for a quarter but she didn't have one so we just got on the bus and went." When juvenile-appellant said that he would slap Child 1's head, he said it not in a "kidding manner," but in a "serious manner."

Affirmed.

*Nelson W. S. Goo (Alvin T. Sasaki* on opening brief), Deputy Public Defenders, for juvenile-appellant.

*Arthur E. Ross (Josie T. Bayudan* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.