900 P.2d 1332

**In the Interest of John DOE, born on October 26, 1977, Juvenile–Appellant.**

**No. 17013.**

Intermediate Court of Appeals of Hawai'i.

Aug. 7, 1995.

Jonathan W. Leeds, on the brief, Honolulu, for juvenile-appellant.

James H.S. Choi, Deputy Prosecuting Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Juvenile–Appellant John Doe (Appellant) was charged by a petition dated August 24, 1992 with Assault in the Third Degree, in violation of Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1985).[1] The petition was filed by the State of Hawai'i (the State) in the Family Court of the First Circuit[2] on October 28, 1992.

On February 22, 1993, the court, pursuant to HRS § 571–11(1) (1985), filed the Findings, Order and Decree which adjudged Appellant a law violator. Appellant was ordered to perform thirty hours of community service, to make restitution under the Juvenile Monetary Restitution Program, to write a letter of apology to the complaining witness (Witness), and to undergo counseling.

Appellant filed a motion for reconsideration which was denied by the court on March 12, 1993. The Findings of Fact, Conclusions of Law and Order Denying Motion for Reconsideration was filed on April 23, 1993.

Appellant claims the court erred in (1) consolidating Appellant's trial with his brother's trial, (2) admitting testimony of settlement negotiations inadmissible under Hawai'i Rules of Evidence (HRE) Rule 408, and (3) finding that Witness "suffered pain and substantial injuries" as a result of the alleged assault.

I.

On February 22, 1993, the day of trial, the State orally moved to consolidate Appellant's trial with his brother's trial. Objecting, Appellant contended that the motion was a pretrial motion and should have been filed by December 14, 1992, the court-ordered deadline for pretrial motions. Appellant also argued that he would be prejudiced by the joinder.

Overruling Appellant's objection, the court noted that Hawai'i Rules of Penal Procedure (HRPP) Rule 12 permitted it to grant either a written or oral motion, provided the motion was made prior to trial. Citing HRPP Rules 8 and 13, the court granted the consolidation motion, reasoning that the charged offenses for the two cases arose from an incident that occurred on the same date and apparently at the same time. The court also found that neither minor would be prejudiced by the joinder under HRPP Rule 14.[3]

We examine the evidence adduced in the consolidated trial. On July 11, 1992, Appel-

1. Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1985) provides that a "person commits the offense of assault in the third degree if he ... [i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]" " 'Bodily injury' means physical pain, illness, or any impairment of physical condition." HRS § 707–700 (Supp.1992).

2. HRS § 571–11(1) (1985) states:
Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:
(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance. Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

3. Hawai'i Rules of Penal Procedure (HRPP) Rule 14 states:
**RELIEF FROM PREJUDICIAL JOINDER.**
If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a charge or by such joinder for trial together, the court may order an election or separate trials of counts, grant a sever-

lant and his brother (Brother) were attending a graduation lūʻau [4] in Lāʻie. Sometime between 9:30 P.M. and 10:00 P.M., Witness, was leaving the lūʻau with a friend when he saw Appellant and Brother. Brother ran up to Witness and struck Witness in the mouth with a closed fist. Witness's front left tooth broke, and Witness bled from the mouth. As Witness was standing there, he was struck again. Brother, who was in a boxing stance, told Witness, "'I want you.'" Then, Appellant struck Witness on the left jaw area. Witness testified that he felt "regular" after being "punched" by Appellant. Upon further questioning, Witness indicated he felt "sore." Witness added that Appellant and Brother continued to hit the back of his head as he walked away from them.

Witness spoke to the police on the night of the incident but did not identify his assailants because he was afraid. Two days after the incident, Witness went to see his mother (Mother) and told her what had happened and who had hit him. They then went to Appellant's house. Appellant, Brother, their father (Father), their mother, and Witness's uncle were also present.

When the State called Mother as a witness at trial, Appellant objected, contending that when Mother and Witness visited Appellant's home, the discussions which followed constituted settlement negotiations inadmissible under HRE Rule 408. The court, in turn, questioned the applicability of HRE Rule 408 to "criminal matters." [5] In response, the State maintained that settlement negotiations did not take place and that Mother merely attempted to determine what had happened. The State also argued that if settlement negotiations did take place, the "admissions from the minors saying that they did it ... [had] nothing to do with paying anything." [6]

Overruling the objection by Appellant's attorney, the court limited Mother's testimony to the "admissions made by the minors [ (Appellant and Brother) ] ... [and to] the time elements of when [Witness] advised her as to the identity of the alleged perpetrators[.]" Evidence of negotiations, if any, was thus excluded.

---

ance of defendants or provide whatever other relief justice requires.

4. A "lūʻau" is a "Hawaiian feast, named for the taro tops always served at one[.]" M. Pukui & S. Elbert, *Hawaiian Dictionary* 214 (rev. ed. 1986).

5. [APPELLANT'S ATTORNEY:] Considering that the—that the primary purpose or the central scope of the mother's visit concerned the payment of the medical bills, the minor's argument is that all the collateral discussions were part of the same discussion and therefore should be excluded.

....

THE COURT: Civil matters. How does it apply to criminal matters?

[APPELLANT'S ATTORNEY:] Well, what it does is it—is—is it puts the defendant in a—defendant in—well, it's—pursuant to the Hawaii [Hawaiʻi] Rules of Evidence applies to criminal and civil matters.

THE COURT: I understand that.

But I'm asking you for applicable—app—applicability directly to criminal. I mean, is it not more in the nature of a civil? How is it applicable to criminal matters....

[APPELLANT'S ATTORNEY:] It says that—

THE COURT: That's all I'm asking.

[APPELLANT'S ATTORNEY:] And—and my answer is that it's—that since it does not prove

liability for the injury liability would also mean criminal liability.

6. The State's argument was as follows:

THE COURT: [Mr. Prosecutor], what's your offer of proof on this witness with respect to—I know you have indicated previously there are some admissions.

[PROSECUTOR:] Your Honor, is—this argument by the novel [sic] that these are excluded in 408 and 409—

[APPELLANT'S ATTORNEY:] It's not novel.

[PROSECUTOR:] —4—under this circumstances—that—even if the Court was—were to go along—hypo—you know, hypothetically let's say go along with the argument, that would deal with admissions by the father, he's the one who's going to pay. We're talking about admissions from the minors saying that they did it. And it has nothing to do with paying anything.

Simply the mom went over to the house to find out what—what was going on and in the process of doing so the minors were asked whether or not they did it and they said yes. It's admissions [sic] plain and simple. It has nothing to do with a compromise.

Towards—at one point the mother did bring up the fact that the dental bill needs to be taken care of, but it was not a compromise—

Mother related that on July 12, 1992,[7] she went to see Witness and observed that his lip and left side of his jaw were swollen and his front tooth was missing. Witness told her what had happened and they then proceeded to Appellant's home and spoke to Appellant's parents. Father questioned Brother and Appellant in Mother's presence and both Brother and Appellant admitted to assaulting Witness:

Q. [(by the State)] And what was the—what did the father—or rather how did that conversation occur?

A. [(by Mother)] The father asked [Appellant] to explain what happened. And [Appellant] did. And he also admitted hitting [Witness].

Q. Okay.

When you say he told him what happened, did he describe what his actions were? Did he say what he did?

A. They hardly talked, you know. When the father asked them questions it was yes, no, yeah, I hit 'em.

Q. Uh-huh.

A. It wasn't really explaining exactly in details.

Q. And—

A. Was, yeah, I hit 'em and oh, I sorry. I mean, those are the answers they gave the father.

Q. Okay.

So, he also said he punch [Witness]?

A. Yes.

Q. Did they—was he asked why he punched [Witness]?

A. Yes.

The father asked why did he—

. . . .

. . .—fight [Witness].

. . . .

. . . Q. And what was the response that the person you identify as [Appellant] give?

A. Oh, I saw my brother, so I jump in.

Evidence of negotiations, if any, were also excluded from Father's examination by the court. Father did verify that Mother saw him soon after the incident. He acknowledged that Appellant admitted hitting Witness but stated that Brother denied striking Witness. Father believed that other people had also struck Witness that night. Although he was not at home for Mother's second visit, Father related that Mother had visited a second time with a bill from a doctor. Father denied responsibility for Witness' medical bills, because he did not believe that his sons were liable for the injuries.

Q. [(by the State)] . . . You don't think that you should have to pay for the repair of [Witness's] knocked out tooth, right?

A. *That's what I told [Mother].*[8]

Q. Okay.

A. There were fifteen to thirty other kids over there, I don't know who's responsible. And if the [c]ourt proves that they were responsible I'll pay for the bill.

(Emphasis and footnote added.)

Father could only recall speaking to Mother at the first meeting:

Q. [(by the State)] What about the second time, do you remember that?

A. I don't think I was home.

Q. You weren't home?

A. Probably talking to my wife or—

Q. Okay.

A. I don't recall.

Q. First time she [(Mother)] came was pretty soon after this—this fight happened, right?

---

**7.** Witness and Mother testified that their first meeting after the incident occurred on different days.

**8.** Father referred to "Mother" by Witness's last name and not by Mother's last name.

A. I think so.

Brother claimed that he swung at Witness and missed, but that Appellant then hit Witness on the right side of Witness's face.

Appellant did not testify.

At the conclusion of the trial, the court found the State had proven its case beyond a reasonable doubt.

## II.

We first consider the court's use of the HRPP.

 The HRPP do not apply to HRS § 571–11(1) proceedings. HRPP Rule 54(b). However, in the absence of comparable rules in the Hawai'i Family Court Rules (HFCR), this court has approved of the use of HRPP rules in HRS chapter 571 proceedings. *In re Doe*, 3 Haw.App. 325, 650 P.2d 603 (1982). Although this court acknowledged that the HFCR "do not contain a rule similar to Rule 29, HRPP (1977)," it nevertheless stated that "an accused in family court proceedings under HRS § 571–11(1) has the same right to move for a judgment of acquittal as does an accused in a proceeding to which Rule 29, HRPP, is applicable." *Id.* at 326 n. 1, 650 P.2d at 605 n. 1. It was also held, in connection with another HRPP rule, that "the thought behind ... Rule 7(c) of the Hawaii [Hawai'i] Rules of Penal Procedure (1977) which states that '[f]ormal defects [in the charge] ..., shall not be ground for dismissal of the charge or for reversal of a conviction if the defect did not mislead the defendant to his prejudice' applies in family court situations." *Id.* at 329, 650 P.2d at 607. While HRS § 571–11(1) proceedings are not criminal cases, they are treated, in many respects, like criminal cases where necessary and appropriate. "[A] hearing to determine delinquency need not 'conform with all of the requirements of a criminal trial[;]' but ... the procedures employed 'must measure up to the essentials of due process and fair treatment.'" *In re Doe*, 70 Haw. 32, 761

P.2d 299 (1988) (quoting *In re Gault*, 387 U.S. 1, 30, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967) (internal quotation marks and citation omitted)). For example, on appeal, HRS § 571–11(1) proceedings are subjected to the substantial evidence standard applied to appeals from criminal convictions. *See Doe*, 3 Haw.App. at 332, 650 P.2d at 608. The rules of evidence in criminal cases apply to HRS § 571–11(1) proceedings, and evidence which violates "the child's rights secured under the constitution of the United States or the State of Hawaii [Hawai'i]" may not be admitted. HRS § 571–41(c) (1985). The court and the parties here treated these proceedings similarly, not questioning the relevance of HRPP Rules 8, 12, 13, and 14.

 Accordingly, we conclude that no reversible error is committed where the family court employs rules from the HRPP in adjudicating HRS § 571–11(1) proceedings, if the otherwise correct use of such rules does not conflict with the judicial administration of HRS chapter 571 and is not unfairly prejudicial to the minor(s) involved. We indicate only that where the court and/or the parties have availed themselves of the HRPP, each case must be examined separately. Hence, we discuss HRPP Rules 8, 12, 13, and 14 because of their relevance to these proceedings.

## III.

Appellant challenges consolidation of his trial with Brother's trial on grounds that (1) the State's oral motion on the day of trial was untimely, (2) he had no opportunity to conduct discovery relating to Brother's case, and (3) the "much greater" evidence against Brother would taint his case.

## A.

The court relied on HRPP Rule 12. HRPP Rule 12(b)(5) mandates that a pretrial motion "for consolidation ... of ... defendants under [HRPP] Rule 13" "must be

raised prior to trial[.]"[9] In that connection, a "pretrial motion[ ] . . . must be made within 21 days after arraignment unless the court otherwise directs." HRPP Rule 12(c). HRPP Rule 12(f) further provides that the failure to file such a motion "within the time set by the court pursuant to section (c) . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

Appellant was arraigned on November 23, 1992, and the pretrial motions deadline was December 14, 1992. It is not disputed that the February 22, 1993 motion to consolidate was made well after the deadline for filing pretrial motions. Accordingly, there was a clear and palpable violation of HRPP Rule 12(c).

 However, a court may grant relief from the "waiver[,]" "for cause shown[.]" HRPP Rule 12(f). The court did not specify its reason for allowing the motion to be made in spite of the "waiver[.]" Rather, it simply stated that "[t]he [c]ourt in its discretion is exercising its authority and will permit [the prosecutor] to make his oral motion[.]" As the court pointed out, the finding of "cause" under HRPP Rule 12(f) which permits the late filing of criminal pretrial motions rests within the sound discretion of the court, and on appeal, we review the court's decision for abuse of discretion. *See United States v. Taylor,* 792 F.2d 1019, 1025 (11th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1957, 1958, 95 L.Ed.2d 530 (1987). Impliedly, the court must have determined that "cause" existed to allow the late filing. In answer to Appellant's objection that the motion to consolidate was untimely, the State explained that:

[I]t [was] a normal practice of this [c]ourt—since we don't know which minors would be here or not at the date of trial— to allow these motions to come at the morning of trial when we see exactly who's here and if we can consolidate at that time.

Because if we move to consolidate prior then what we'd have is a case where

there's two minors, and if only one shows up then . . . we end up asking for a continuance or asking for severance at that time.

Appellant's attorney and the court did not dispute this assertion. Furthermore, a finding of "cause" could be supported by the court's expressed rationale for granting the motion discussed below. Considering these factors, we find that the court did not abuse its discretion in entertaining the oral motion.

### B.

We consider next whether the court erred in granting the motion to consolidate. HRS § 571–11(1) proceedings may be ordered joined by the court:

When more than one child is alleged to have been involved in the same act, the hearing may be held jointly for the purpose of making a finding as to the allegations in the petition and then shall be heard separately for the purpose of disposition except in cases where the children involved have one common parent.

HRS § 571–41(c).

 The family court did not apply HRS § 571–41(c) but instead, as we have pointed out, utilized HRPP Rules 8, 13, and 14. Because HRS § 571–41(c) lacks any express standards governing the exercise of the court's discretion to join cases or to account for situations where joinder may result in unfair prejudice to one of the minors, the family court's use of HRPP Rules 8, 13, and 14, in and of itself, did not conflict with HRS § 571–41(c) and, thus, is not reversible error in this case.

 On appeal, a trial court's order consolidating cases for trial under HRPP Rule 13 shall not be disturbed absent an abuse of discretion. *See* 1 C. Wright, *Federal Practice and Procedure: Criminal* § 212, at 763 (2d ed. 1982) (*Federal Practice* ) (Federal Rules of Criminal Procedure Rule 13 is substantially the same as HRPP Rule 13(a)).

---

9. Under Hawai'i Family Court Rules (HFCR) Rule 6(d)(3)(i), forty-eight hours' notice is re-

quired for written motions; however, the motion to consolidate was orally made.

*Cf. State v. Renon,* 73 Haw. 23, 31, 828 P.2d 1266, 1270 (1992) (joinder of defendants under HRPP Rule 8).

■ In granting the motion to consolidate, the court indicated that:

[The] events were so closely connected with respect to time, place and occasion that it may be difficult to separate the proof [and] . . . the incident occurred on the same date and apparently at the same time.

The [c]ourt finds therefore that consolidation under Rule 13 is generally appropriate and that these matters come under the single jurisdiction of this [c]ourt (indiscernible). . . . from the same conduct or episode.

There's been no showing of prejudice by either defense [c]ounsels [sic] and no indication that there is (indiscernible) . . . [a] problem.

Appellant does not contest the court's finding that the events in both cases were closely connected in time and place and arose from the same episode. From the facts, it is evident that the benchmarks for consolidation as set forth in HRPP Rules 13 and 8 were accordingly satisfied.[10]

■ But, even if the requirements of HRPP Rule 13 are met, consolidation may not be warranted. The court must take into account whether consolidation would promote the "economical and efficient administration of criminal justice by avoidance of needless multiple trials and [would protect] criminal

defendants from the unfair prejudice that may be caused by the joining" of cases. *United States v. Halper,* 590 F.2d 422, 428 (2d Cir.1978). That being so, "[t]he court should refuse to order a joint trial if there is any doubt about the fairness of the trial." 1 *Federal Practice* § 212, at 762. In this case, the efficient administration of justice was served by the consolidated trials, because the charges involved the same complaining witness and the same incident. By consolidating the trials, Witness and the other witnesses testified once, rather than twice, to the same events. Nevertheless, we must also consider whether Appellant was prejudiced by the consolidation. Appellant presented two claims of prejudice.

## C.

Appellant claims he lacked the opportunity to conduct discovery relating to Brother. Admittedly, the late motion to consolidate prevented discovery of Brother's case. But the facts reveal that the alleged incident consisted of a simple assault on the same complainant by both brothers at the same time. We do not perceive any material facts that would not have already been disclosed in Appellant's investigation of his own case. Moreover, Appellant does not specify that discovery would have yielded exculpatory evidence, and our review of the record does not hint of any.

■ As to the contention that evidence against Brother would taint Appellant, we presume, in the absence of evidence to the contrary, and we perceive none in the record,

---

10. HRPP Rule 13 provides in pertinent part:

Rule 13. **CONSOLIDATION.**

(a) **Generally.** The court may order consolidation of two or more charges for trial if the offenses, and the defendants if there are more than one, could have been joined in a single charge.

(b) **Related Offenses.**

(1) Two or more offenses are related offenses, for the purposes of this rule and Rule 8(c), if they are within the jurisdiction of a single court and are based on the same conduct or arise from the same episode.

The court relied on the following provision of HRPP Rule 8(b):

(b) **Joinder of Defendants.** Two or more defendants may be joined in the same charge:

. . . .

(3) when, even if conspiracy is not charged and all of the defendants are not charged in each count, the several offenses charged:

(i) were part of a common scheme or plan; or

(ii) were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the others.

that a judge in arriving at a judgment in a consolidated jury-waived trial will properly segregate the evidence relating to the separate defendants. We "recognize[ ] the ability of a trial judge sitting as a fact finder in a bench trial to separate the evidence offered against different defendants and to compartmentalize the cases to ensure the integrity of each defendant's trial." *People v. Abston*, 263 Ill.App.3d 665, 670–73, 200 Ill.Dec. 361, 366–67, 635 N.E.2d 700, 705–06, *cert. denied*, 157 Ill.2d 506, 205 Ill.Dec. 169, 642 N.E.2d 1286 (1994). *Accord People v. Schmitt*, 131 Ill.2d 128, 137–38, 137 Ill.Dec. 12, 16, 545 N.E.2d 665, 669 (1989). *See Sabol v. Sabol*, 2 Haw.App. 24, 30, 624 P.2d 1378, 1383 (1981) (in divorce case, presumption that trial judge would restrict consideration of evidence to specific issue and not consider it for other issues for which the evidence would be potentially prejudicial). *See also State v. Antone*, 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) (a judge is presumed to rely only on competent evidence); *State v. Nieves*, 1 Haw.App. 586, 588–89, 623 P.2d 100, 102 (1981); *State v. Gutierrez*, 1 Haw.App. 268, 270, 618 P.2d 315, 317 (1980).

Under the circumstances, we cannot conclude that Appellant was denied his right to a fair trial. As a result, we hold that the court did not abuse its discretion in ordering the cases consolidated.

## IV.

▉ Further, Appellant submits that testimony by Mother and Father regarding Appellant's admissions that he hit Witness, made in the course of alleged compromise negotiations should have been excluded under HRE Rule 408. The "rules of evidence applicable to criminal cases" apply to HRS § 571–11(1) proceedings. HRS § 571–41(c). Although the State concedes in its brief that HRE Rule 408 applies to criminal cases, because this is a question of first impression in this jurisdiction, we examine whether HRE Rule 408 properly applies to criminal cases before considering its application to this case.

### A.

▉ Generally, HRE Rule 408 renders evidence of a compromise or attempts to compromise a claim inadmissible. HRE Rule 408 states:

**Compromise, offers to compromise, and mediation proceedings.** Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, or (3) mediation or attempts to mediate a claim which was disputed, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations or mediation proceedings is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation proceedings. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

This rule should apply to criminal as well as civil proceedings. "[W]here a transaction gives rise to both civil and criminal remedies, the fact that a good faith offer was made to compromise the civil claim should be protected in both proceedings." 2 J. Weinstein, M. Berger & J. McLaughlin, *Weinstein's Evidence* ¶ 408[01], at 17 (1995) (*Weinstein's Evidence*). "If the transaction on which the prosecution is based also gives rise to a civil cause of action, a compromise or offer of compromise of the civil claim should be privileged when offered at the criminal trial...." 2 *McCormick on Evidence* § 266, at 200 (J. Strong 4th ed. 1992).

The reason for excluding compromises or settlement negotiations is their irrelevancy. 2 *Weinstein's Evidence* ¶ 408[02], at 19. An offer to compromise "is said to be motivated

by a desire to 'buy peace' rather than by an acknowledgment of the merits of the claim." *Id.* In that regard, federal courts have held compromises or settlements of civil actions inadmissible in criminal cases.

> It has long been recognized that evidence of an effort to compromise is inadmissible in a civil case. Why, then should evidence of the settlement of a civil case be received in a criminal prosecution where the essential ingredients of liability are wholly at variance, in that no proof of wilful violation is necessary to establish civil liability, but a conditio sine qua non to criminal liability?
>
> ... [T]he evidence [was] offered to show that [the defendant] had settled the civil action.... In receiving the evidence ..., the trial judge left the jury under the impression that the settlement by [the defendant] of his civil liability was evidence of his criminal guilt.

*Ecklund v. United States,* 159 F.2d 81, 84–85 (6th Cir.1947) (citations and emphasis omitted).

██ HRE Rule 408 is substantially similar to Federal Rules of Evidence (Fed. R.Evid.) Rule 408,[11] and, therefore, interpretations of the federal rule may be used as an aid in construing the Rule. Citing to *Ecklund,* the court in *United States v. Meadows,* 598 F.2d 984, 989 (5th Cir.1979), agreed with "the applicability of Rule 408 to govern the admission of related civil settlement negotiations in a criminal trial." In *United States v. Hays,* 872 F.2d 582, 589 (5th Cir.1989), the court held in a prosecution for conspiracy, misapplication of funds and making false entries, that the erroneous admission of defendant's civil settlement agreement to assist the jury in understanding the "breadth of the conspiracy" directly violated Rule 408. The court stated:

> As the appellants correctly contend in brief, and as the framers of Rule 408 clearly contemplated, the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound. It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back.

*Id.*

We find the foregoing authorities persuasive and, thus, hold that by virtue of HRE Rule 408, related compromises or attempts to compromise civil liability are not admissible in a criminal trial because of the danger that such evidence may be taken as criminal guilt.

### B.

Next, we consider HRE Rule 408's applicability to this case.

If Father and Mother had been negotiating a settlement or compromise, then pursuant to HRE Rule 408, all "[e]vidence of conduct or statements made in compromise negotiations ... is ... not admissible." In other words, Rule 408 also excludes statements made during negotiations. 2 *Weinstein's Evidence* ¶ 408[03], at 24. Contrary to the State's position, the fact that the admissions may have been made by Appellant do not render Appellant's statements admissible, for the sons' statements would be factual statements made in the course of settlement negotiations.[12]

██ Disallowing Appellant's admissions in evidence would be consistent with the

---

11. Unlike Hawai'i Rules of Evidence (HRE) Rule 408, Federal Rules of Evidence (Fed.R.Evid.) Rule 408 does not explicitly apply to mediation proceedings. Before being amended to include mediation proceedings, HRE Rule 408 was identical to Fed.R.Evid. Rule 408. Commentary to HRE 408 (1985).

12. That Appellant and Brother made the admissions would not necessarily exempt these statements from HRE Rule 408 because Father apparently elicited these admissions during his conversation with and in the presence of Mother. Moreover, the underlying policy is to broadly protect statements made in negotiations to encourage full and frank disclosure in settlement efforts:

> The practical value of the common law rule has been greatly diminished by its inapplicability to admissions of fact, even though made in the course of compromise negotiations, unless hypothetical, stated to be "without prejudice," or so connected with the offer as to be insepa-

Rule's underlying policy. To permit the use at trial of factual admissions in settlement negotiations would " 'hamper free communication between the parties and thus ... constitute an unjustifiable restraint upon truly effectuating the purpose of the rule.' " 2 *Weinstein's Evidence* ¶ 408, at 3 (quoting Joint Report of the Standing Committee on Rules of Practice and Procedure and the Advisory Committee on Rules of Evidence of the United States Judicial Conference to the Senate Committee on the Judiciary, May 22, 1974, pp. 15–21). This is because "[i]n order to implement settlement of disputes there must be: 'Full and frank disclosure by each party of the position taken by him [or her] and the facts on which he [or she] relies to sustain his [or her] position.' " *Id.* ¶ 408[03], at 26–27 (quoting Tracy, *Admissibility of Statements of Fact Made During Negotiations for Compromise*, 34 Mich.L.Rev. 524, 529 (1936)). But, before HRE Rule 408 is applied, "there must be an actual dispute, preferably some negotiations, and at least an apparent difference of view between the parties as to the validity or amount of the claim." 2 *McCormick on Evidence* § 266, at 194–95 (J. Strong 4th ed. 1992) (footnotes omitted) (discussing Fed.R.Evid.Rule 408). The court, in determining whether negotiations were involved, should look at the declarant's objective in making the statement. *See Myers v. Cohen*, 67 Haw. 389, 396, 688 P.2d 1145, 1150–51 (1984) (HRE Rule 408 did not apply because purpose of attorney's statement was to secure a withdrawal of stipulated judgment in a separate action and not settlement negotiations).

Therefore, the question facing the court was whether Mother and Father were engaged in "compromise negotiations" when Appellant admitted hitting Witness. Only after answering this question could the court determine whether or not Mother's and Fa-

ther's testimonies regarding Appellant's admissions were admissible in evidence. Because this was a matter of first impression, the trial court is not to be faulted. Ideally, a motion in limine should have been filed, and the court, after a hearing, should have determined whether the admissions were made during compromise negotiations. It also would have been acceptable for counsel to object at the first instance of submission, as Appellant's counsel did here, and for the court to make the determination at that time. 23 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5315, at 288 (1980). Or the court could have admitted testimony of any negotiations subject to a motion to strike since this was a jury-waived trial. Here, however, rather than make the necessary determination, the court ordered testimony of any negotiations excluded:

> I'll admit [Mother's] testimony with respect to any admissions made by the minors to—to—and as to the time elements of when [Complainant] advised her as to the identity of the alleged perpetrators in this event. But I—her testimony will be limited to those points.

Later, the court likewise limited Father's testimony:

> You know, [Father] is brought as a rebuttal witness to [Mother]. And I limited her testimony to the admissions and to time.... And therefore, I want to keep [Father's] examination also limited.

But at trial, Appellant's attorney had claimed the admissions were made in the course of an attempt to obtain restitution:

> [I]f the Prosecutor was to make an offer of proof ... it would be that the mother made a home visit to [Appellant's] house to discuss the incident involve—allegedly involving [Appellant and Brother] and her son.

rable from it. An inevitable effect is to inhibit freedom of communication with respect to compromise, even among lawyers. Another effect is the generation of controversy over whether a given statement falls within or without the protected area. *These considerations account for the expansion of the rule herewith*

*to include evidence of conduct or statements made in compromise negotiations, as well as the offer or completed compromise itself.*
23 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5301, at 159 (1980) (quoting Fed.R.Evid. Rule 408 advisory committee's note) (citation omitted) and (emphasis added).

The visit was ... concerning the payment of the medical bills and collateral matters considering—concerning who—who hit whom and who was involved in the incident concerning the boy's dental problems.

Father's testimony, moreover, gives rise to the possibility that compromise negotiations did take place during the first meeting between Mother and Father. Father testified he told Mother he did not believe that he should have to pay for the repair of Witness's broken tooth. While the transcript does not specifically establish when Father told Mother this, Father could only recall being with Mother at the first meeting when Appellant's admissions were made.[13]

■ But assuming that the court erroneously allowed the admissions, the error was harmless. HFCR Rule 61.[14] The potentially inadmissible evidence established that Appellant struck Witness. However, that fact was independently established by Witness and Brother. The testimonies of Mother and Father in that regard did not supply any information not provided by an independent source. Therefore, we conclude that even if the subject testimonies of Mother and Father were improperly received, their receipt was harmless error.

### V.

Finally, Appellant disputes the sufficiency of "physical pain" evidence. In pertinent part, HRS § 707–712(1)(a) states that the crime of Assault in the Third Degree is committed if the defendant "causes bodily injury to another person[.]" "Bodily injury," in turn, "means physical pain, illness, or any impairment of physical condition." HRS § 707–700 (Supp.1992).

■ Appellant relies on initial testimony that Witness himself did not know how he felt after the "punch," but felt "regular." Yet, upon further questioning Witness testified he felt "sore":

Q. [(by the State)] After you got punched in the mouth what was [Brother]—I mean [Appellant] doing at that point?

A. [(by Witness)] Standing there.

Q. Okay.

And then what side of the jaw did [Appellant] hit you on?

A. My left.[15]

Q. And how did you feel when he hit your jaw?

A. I don't know. Regular.

Q. When you say "regular", what—what do you mean by regular?

Did you feel anything when he hit your jaw?

A. Yeah.

---

13. The State contends that the court did not err in considering the admissions because there was no testimony regarding compromise negotiations. There was no testimony regarding compromise negotiations because, as we have pointed out, the court expressly limited the scope of the witnesses' testimony. But, if in fact, there were such negotiations, that fact was required to be determined by the trial court in order to determine the admissibility of the admissions.

The State does, however, admit that it questioned Father regarding Witness's medical bill. But it claimed this was only to demonstrate Father's bias and interest. While HRE Rule 408 does not require exclusion of evidence offered to prove a witness' bias or prejudice, the issue here is whether testimony of Appellant's admissions should have been allowed. Father's testimony that Appellant admitted assaulting Witness does not establish Father's bias or prejudice, and therefore does not fall within any exception to Rule 408.

14. HFCR Rule 61 provides:

**Rule 61. HARMLESS ERROR.** No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a decree or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

15. Brother testified that Appellant struck Witness on the right side of his face, but Witness also testified that Appellant was standing to Witness's left when Witness was struck. In any event, any conflict in testimony was for the trial court to resolve.

Q. What did you feel?

A. One punch.

Q. Well, did—did it feel nice, was it sore, was it hurt, what—what was it when he hit your jaw?

A. Was sore.

(Footnote added.) This testimony that Witness was "sore" after being struck by the Appellant was sufficient to establish "physical pain" and thus, the element of "bodily injury" in a charge of assault.

 On a challenge to the sufficiency of the evidence, the evidence must be viewed "in the strongest light for the prosecution[.]" *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931 (1992). So long as there is "substantial evidence" as to every material element of the offense the judgment of conviction will be upheld. *State v. Gabrillo,* 10 Haw.App. 448, 454, 877 P.2d 891, 894 (1994) (whether there was sufficient evidence to support a prima facie case requires an evaluation of the evidence as it relates to the elements of the crime). "This standard of review is the same whether the case [is] tried before a judge or a jury." *State v. Hernandez,* 61 Haw. 475, 478, 605 P.2d 75, 77 (1980). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to support a conclusion." *Batson,* 73 Haw. at 248–49, 831 P.2d at 931. In that connection, the assessment of a witness' credibility is for the factfinder. *State v. Cannon,* 56 Haw. 161, 166, 532 P.2d 391, 395–96 (1975). Here, viewing the evidence in the light most favorable to the prosecutor, evidence that Witness felt "sore" would enable a person of reasonable caution to conclude that Witness suffered physical pain as a result of being struck by the Appellant.

Witness's initial response of not knowing how he felt, and feeling "regular" was testimony to be weighed with his later statement that he felt "sore." His credibility and the weight to be given his testimony are matters generally left, as we have indicated, to the factfinder; here, the trial court.

The court found that Witness "suffered pain and sustained injuries." In light of the evidence, the finding was not clearly erroneous. *See State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995). Consequently, we hold that there was substantial evidence to support the court's determination.

VI.

For the foregoing reasons, we affirm the February 22, 1993 Findings, Order and Decree adjudging Appellant a law violator and the April 23, 1993 Findings of Fact, Conclusions of Law and Order Denying Motion for Reconsideration.