**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000587
28-JUL-2023
07:59 AM
Dkt. 79 SO**

NO. CAAP-18-0000587

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
PAMELA N. MURAKAMI, also know as PAMELA N.M. FARNSWORTH
Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NOS. 2FC161000203(4), 2FC161000336(4), and 2FC161000379(4))

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Wadsworth and Nakasone, JJ.)

Following a bench trial on January 22 and 23, 2018, Defendant-Appellant Pamela N. Murakami (**Murakami**) was convicted of five counts of violation of an order for protection pursuant to Hawaii Revised Statutes (**HRS**) § 586-11 (2018).[1] Murakami appeals from the corresponding Amended Judgment and Sentence of the Court entered by the Family Court of the Second Circuit (**Family Court**) on May 30, 2018.[2]

Murakami contends the Family Court erred in granting Plaintiff-Appellee State of Hawaiʻi's (**State**) motion to

---

[1]  HRS § 586-11 provides, in pertinent part:

> Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor.

[2]  The Honorable Richard T. Bissen, Jr. presided.

consolidate the cases and counts against her.  Murakami also contends there was insufficient evidence to convict her of violating the order for protection entered on behalf of her ex-husband, Bradley Farnsworth (**Farnsworth**).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Murakami's points of error as follows and affirm.

**(1)**  Murakami contends the Family Court erred in granting the State's motion to consolidate the charges against her because each count involved separate and distinct encounters between Murakami and Farnsworth on different dates and thus consolidation of the five charges against her was prejudicial.

Murakami was charged with five counts of violation of an order for protection in three cases: 2FC161000203 (1 count for an incident on April 5, 2016); 2FC161000336 (3 counts for incidents on April 19, May 24, and June 7, 2016); and 2FC161000379 (1 count for an incident on July 12, 2016).  The asserted violations occurred on five separate dates and occurred at or around the Mayor Hannibal Tavares Community Center in Pukalani on the island of Maui (**Community Center**).

On October 3, 2017, the State filed a Motion for an Order Consolidating Cases for Trial (**Motion to Consolidate**), which sought to consolidate the three cases and the counts pursuant to Hawaiʻi Rules of Penal Procedure (**HRPP**) Rules 8 and 13.[3]  On October 24, 2017, the Family Court granted the State's

---

[3]  HRPP Rule 8 Provides, in pertinent part:

> **(a) Joinder of offenses**. Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses:
>    (1) are of the same or similar character, even if not part of a single scheme or plan; or
>    (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

HRPP Rule 13 provides, in pertinent part:

(continued...)

Motion to Consolidate over Murakami's objection and entered an Order Granting State's Motion to Consolidate.

We conclude the Family Court did not err in granting the State's Motion to Consolidate.  "On appeal, a trial court's order consolidating cases for trial under [HRPP] Rule 13 shall not be disturbed absent an abuse of discretion."  State v. Cordeiro, 99 Hawaiʻi 390, 403, 56 P.3d 692, 705 (2002) (quoting In re Doe, 79 Hawaiʻi 265, 273, 900 P.2d 1332, 1340 (App. 1995)).

The charges were properly joined pursuant to HRPP Rule 8 because they involve offenses of the same or similar character. Where joinder is proper under HRPP Rule 8, subsequent severance is governed by HRPP Rule 14, which states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a charge or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Joinder may be prejudicial by "(1) preventing [defendants] from presenting conflicting defenses or evidence with respect to each charge, (2) permitting the prosecution to introduce evidence that would be inadmissible with respect to certain charges if tried separately, or (3) bolstering weak cases through the cumulative effect of the evidence."  Cordeiro, 99 Hawaiʻi at 411, 56 P.3d at 713 (citation omitted).

In granting the Motion to Consolidate, the Family Court noted that case 2FC161000336 involved three counts of violation of an order for protection, which the State alleged took place on April 19, May 24, and June 7, 2016.  Even though the case contains three separate dates in one complaint, the Family Court noted that Murakami had not moved to sever those three counts. The Family Court determined that "there would be no more prejudice by adding these two additional charges on to . . . the

---

[3](...continued)
        **(a) Generally**. The court may order consolidation of two or more charges for trial if the offenses . . . could have been joined in a single charge.

count that already has three separated, ah, charges in that." Essentially, the Family Court determined that 2FC161000336 contained three counts involving three separate dates in a three month period, Murakami had not moved to sever those three counts, and Murakami would not be prejudiced by the consolidation of two additional counts charging offenses of the same or similar character.  Murakami does not explain how adding the two additional charges in 2FC161000203 and 2FC161000379 was prejudicial.

Murakami only argues that each encounter should have been weighed on its distinct merits, which appears to be a claim of improper "bolstering."  However, "in a bench trial, we presume that the judge was not influenced by incompetent evidence." State v. Bereday, 120 Hawaiʻi 486, 498, 210 P.3d 9, 21 (App. 2009) (brackets omitted); cf. In re Doe, 79 Hawaiʻi at 274-75, 900 P.2d at 1341-42 ("[W]e presume, in the absence of evidence to the contrary, and we perceive none in the record, that a judge in arriving at a judgment in a consolidated jury-waived trial will properly segregate the evidence relating to the separate defendants.").  Murakami makes no argument that the trial judge improperly considered the evidence, and there is no indication of such in the record.

Therefore, the Family Court did not abuse its discretion in granting consolidation.

**(2)** Murakami contends there was insufficient evidence to prove beyond a reasonable doubt that her conduct in each of the five incidents violated the order for protection.  We disagree.

In a sufficiency of the evidence challenge, "[t]he test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007).

> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of

4

> reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

Id. at 158, 166 P.3d at 331. (quoting State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992)).  Further, the "evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury."  Batson, 73 Haw. at 248, 831 P.2d at 931 (citations omitted).

Here, the following evidence was presented.  On December 18, 2012, the Family Court entered a Third Amended Order for Protection (**Protection Order**) on behalf of Farnsworth against Murakami.[4]  The Protection Order expired on December 5, 2022, and prohibited Murakami from threatening or contacting Farnsworth or their two minor children as follows:

> 1. Do not threaten or physically abuse [Farnsworth] or anyone living with [Farnsworth].
>
> 2. Do not contact, write, telephone or otherwise electronically contact (by recorded message, pager, etc.) [Farnsworth], including where [Farnsworth] lives or works.
>
> . . . .
>
> 5. Do not have any contact with [the parties' minor children] except as provided in SECTION C.

Section C states that "[a]ll custody and visitation shall be in accordance with FC-D-12-1-0065."  On January 7, 2013, the Family Court entered a Judgment of Divorce and Awarding Child Custody (**Divorce Decree**) in Murakami and Farnsworth's divorce proceeding, FC-D-12-1-0065.  The Divorce Decree awarded Farnsworth sole legal and physical custody of the minor children and granted Murakami visitation as follows:

> [Murakami] may have supervised or unsupervised visitation with the parties' children at the discretion of Plaintiff Bradley Steven Farnsworth, with the supervisor(s) to be

---

[4]  The Honorable Mimi DesJardins presided.

> selected by Plaintiff Bradley Steven Farnsworth and paid for by Defendant Pamela Naomi Murakami Farnsworth, or by further order of the Court. However, the Court will not consider a motion by Defendant regarding visitation until such time as Defendant provides proof that she is under the care of a psychiatrist and following all recommended treatment or has been clinically discharged.

(Emphases added.)  There is no dispute that there was an order for protection against Murakami and in favor of Farnsworth at all relevant times in this case.  There is also no dispute that Murakami was on notice, not only of the Protective Order, but of the conditions of visitation including how and when Murakami could have visitation with the children.

At the conclusion of the bench trial, the Family Court made findings of fact and Murakami does not dispute any of the findings.  The unchallenged findings of fact are thus binding on appeal.  State v. Rodrigues, 145 Hawai'i 487, 497, 454 P.3d 428, 438 (2019) (citation omitted).

## April 5, 2016 Incident

With regard to the incident on April 5, 2016, the Family Court found that Murakami entered the Community Center to use the bathroom.  Farnsworth was already inside the Community Center with the children and testified that they were at the Community Center for the children's aikido class.  The Family Court found that Murakami directed the comment "fucking thief" at Farnsworth as she entered the Community Center and headed to the bathroom.  Farnsworth took a video recording of Murakami as she left the Community Center showing that as Murakami was leaving, she turned to look at Farnsworth.  Farnsworth testified that he believed she was at the Community Center to harass and intimidate him and the children.

Murakami then re-entered the Community Center, purportedly to wash her hands.  The Family Court found that based on the video taken by Farnsworth of Murakami re-entering the Community Center, "another parent thought that the situation was tense enough to have to intervene[;]" the parent followed Murakami out for what appeared to be for the purpose of

6

preventing her from coming back in a third time; the parent asked Murakami if she was angry at something; and the "vibe" from Murakami was enough for a neutral person to become concerned either for their own welfare or for others at the Community Center.

The Family Court found that even if Murakami did not know her family was there and just happened to be uttering a sound as she walked in, Murakami's "actions on video shows [sic] that she clearly made eye contact with the person who was shooting the film. And that that is Mr. Farnsworth. And she did have a stare down, if you will."  The Family Court found that Murakami made contact with Farnsworth, that it was intentional, knowing, and "[t]hat it was [Murakami's] intention to make a nonverbal and/or verbal statement to Mr. Farnsworth that she was not happy with something[.]"  Farnsworth took a video recording of Murakami leaving the Community Center the first time, which was entered into evidence as exhibit 8.  Farnsworth also recorded the second time Murakami exited the building and the verbal altercation Murakami had with the other parent, which was entered into evidence as exhibit 9.

### April 19, 2016 Incident

With regard to the incident on April 19, 2016, the Family Court found that by this time, "Murakami [knew] for sure that . . . her children are likely to be [at the Community Center] at an aikido class[.]"  The Family Court also found that Murakami's presence at the Community Center was intentional conduct.  Farnsworth testified that as he left the Community Center with the children after their aikido class, Farnsworth saw Murakami in the parking lot of the Community Center in her vehicle.  Farnsworth testified that Murakami's vehicle was parked nearly adjacent to his vehicle, she arrived after Farnsworth did, and that she is aware of what type of vehicle he drives.  As Farnsworth was walking to his vehicle, he heard Murakami yelling or screaming "die bitch die" with her windows up.  Farnsworth testified that the children were with him when he heard Murakami

yell "die bitch die" and that he felt threatened.  The Family Court found Farnsworth's testimony that Murakami made the comment "die bitch die" to be credible and found that the comment was directed at Farnsworth, and that the statement was intentionally and knowingly uttered.

### May 24, 2016 Incident

With regard to the incident on May 24, 2016, the Family Court found that Murakami chose to be at the Community Center during the time she believed Farnsworth and the children would be there and waited for them to leave in their vehicle.  Farnsworth testified that while he and his son were in the vehicle, Murakami drove up to them in her vehicle.  Farnsworth testified that, "[Murakami] was making noise again.  Ah, ah, there were -- it was strange noises. It was loud music.  Ah, and also conversation talking. And then a strange voice that sounded like a child crying. It was being played apparently on her player inside the car."

Farnsworth later left the Community Center with his children and Murakami followed them out of the parking lot.  As Farnsworth was driving, the children took a video of Murakami, which was entered into evidence as exhibit 10.  In the video, Murakami can be seen taking her hands off the steering wheel and yelling "why don't you take a picture, asshole" multiple times while driving next to Farnsworth.  Farnsworth also testified that Murakami seemed to accelerate to catch up to Farnsworth's vehicle, which was in the left lane preparing to make a left turn.  Murakami then drove alongside him in the right lane. Farnsworth had his passenger side windows down and Murakami's window was also down.  Murakami was yelling at Farnsworth and the children as she came up beside their vehicle.  Farnsworth testified that Murakami's driving was dangerous and erratic, and he was concerned that she might hit them.

The Family Court found that Murakami directed the comment "why don't you take a picture asshole" at the children, who were taking the video while Farnsworth was driving.  The

Family Court also found that Murakami initiated the contact "by being where she should not be for the purpose of harassing or getting her point across that she's upset at something," and that the contact was intentional and knowing.

### June 7, 2016 Incident

With regard to the incident on June 7, 2016, the Family Court found that despite the three prior incidents, Murakami showed up at the Community Center in a different vehicle. Farnsworth approached Murakami to take photographs of the vehicle so that he could be aware if Murakami showed up again.  The Family Court found that although it was difficult to make out what was being said in the video recording, Murakami was yelling in the car while Farnsworth was recording, and the yelling was directed at Farnsworth.  The Family Court also found that Murakami had the option of leaving the area to avoid contact with Farnsworth so as not to be in violation of the Protective Order and questioned why Murakami was present at the Community Center parking lot at that time.  The Family Court stated that if Murakami "was just sitting in the car and nothing was said[,] that the Court could not find that any violation [had] occurred." However, the court found that Murakami recognized that Farnsworth was in the parking lot, decided to yell and scream at him, and Murakami's yelling and screaming violated the Protection Order. Two video recordings of the incident were entered into evidence as exhibits 11 and 12.

### July 12, 2016 Incident

Finally, with regard to the incident on July 12, 2016, Farnsworth testified that he and his son were walking on the sidewalk near the Community Center when Murakami approached them in her vehicle, drove past them, and went to the lower parking lot of the Community Center.  Murakami then drove back around with her window down, slowed to a stop, and yelled at Farnsworth and his son.  Farnsworth took a video of when Murakami came back around which was entered into evidence as exhibit 13.  The Family Court found that Murakami intentionally slowed her vehicle down

to make inappropriate comments "in probably the loudest voice she could muster" at Farnsworth who was standing on the sidewalk with their son.  The Family Court found that there was no other legitimate purpose of the violation and even if Farnsworth could not understand what Murakami was screaming, she was not allowed to scream at Farnsworth.

The Family Court found that in each incident, Murakami wanted Farnsworth to be uncomfortable and wanted him to know that she was there.

Based on the record and the unchallenged findings by the Family Court, and considering the evidence in the light most favorable to the prosecution, there is sufficient evidence to support the Family Court's conviction of Murakami on all five counts for violation of an order for protection.

Based on the foregoing, we affirm the Amended Judgment and Sentence of the Court entered by the Family Court of the Second Circuit on May 30, 2018.

DATED:  Honolulu, Hawaiʻi, July 28, 2023.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
Richard D. Gronna,
for Defendant-Appellant                 /s/ Clyde J. Wadsworth
                                        Associate Judge
Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,            /s/ Karen T. Nakasone
for Plaintiff-Appellee                  Associate Judge